(No. 36860.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* AUGUSTUS SANFORD, Plaintiff in Error.

*Opinion filed March 23, 1962.*

WALTER LaVON PRIDE, of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and ROBERT E. CRONIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

This writ of error is prosecuted by Augustus Sanford, defendant, to review a judgment of the criminal court of Cook County finding him guilty of the unlawful possession

of heroin, a narcotic drug, and sentencing him to the penitentiary for a term of 2 to 5 years. As grounds for reversal he contends that the evidence fails to sustain the judgment of conviction.

Defendant's arrest was accomplished through a controlled purchase of drugs made by John L. Thompson, an admitted peddler who was himself arrested on February 24, 1961, for the possession and sale of narcotics. On that date, after some conversation with the police, Thompson made a telephone call to defendant and made an arrangement to purchase $345 worth of narcotics the following day. At 8:00 A.M. on February 25, defendant telephoned Thompson and arranged that they would meet at a certain street intersection. The police then searched Thompson, gave him $345 in currency, after recording the serial numbers, and drove him to the designated intersection. The officers then went to a nearby corner and instructed Thompson to meet them there.

According to Thompson, whose movements were never kept under surveillance by the police, defendant picked him up in an automobile and drove to another intersection where Thompson gave defendant the $345 in currency. After this defendant drove the informer to a tavern and told him to wait. When 30 minutes had elapsed, Thompson called defendant at the latter's home and was told to come there for the narcotics. Thompson said he telephoned the police, took a taxi to defendant's home, where he was given a brown envelope by defendant, and then took the cab to the place where the police were waiting. He said he did not know what was in the brown envelope.

Thomas Bingham, one of the police officers with whom Thompson was purportedly cooperating, told of searching the informer and of giving him the controlled currency, and testified that Thompson was away in excess of two hours before returning to the designated meeting place. When he did arrive he handed the police a sealed brown envelope

containing a white powder which, according to Bingham, proved to be a derivative of opium when field tested. In the latter regard, the only other evidence in this record with respect to the contents of the envelope was a stipulation that a chemist from the crime laboratory would testify the brown envelope turned in by Officer Bingham contained 7.35 grams of an unknown white powder. On cross-examination, Bingham conceded that 7.35 grams was an amount approximately two-thirds less than what the informer had paid for and was supposed to buy from defendant.

· Following further conversation with the informer, the officers then went to defendant's residence, broke down the door and placed him under arrest. They found in defendant's possession $97 of the controlled currency and it was Bingham's testimony that defendant admitted he and Thompson sometimes pooled their money to buy narcotics. · Appearing as a witness in his own behalf, defendant testified that Thompson had talked to him about investing some money, and had then come to his house and left $100 telling defendant that a man would come by with a package and that he, defendant, would make a profit of $200 if he would put $200 of his money with the informer's money and give it to the man. Defendant, who stated that Thompson then took $3.00 for cab fare from the $100, admitted that he knew Thompson sold narcotics but denied ever selling narcotics himself.

We cannot say that the proof in this record establishes the defendant's possession of heroin beyond the reasonable doubt that is required. Apart from the many unsatisfactory inferences arising from the circumstances that the informer was entirely free from police surveillance during the more than two hours he was purportedly consummating the transaction with defendant, there is no proof establishing that the substance defendant supposedly possessed was heroin as charged in the indictment. Indeed, there is no convincing proof that it was a narcotic drug at all. While

Officer Bingham testified the powder in the brown envelope field tested as a derivative of opium, his testimony was directly contradicted by the chemical analysis which showed that the identity of the substance was unknown.

The burden is on the prosecution in a criminal case to establish beyond a reasonable doubt not only a defendant's guilt, but also the essential elements of the crime. (*People* v. *Corbishly,* 327 Ill. 312, 329; *People* v. *Hein,* 315 Ill. 76, 81.) In the case at bar, in order to prove the *corpus delecti,* it was necessary for the prosecution to prove not only defendant's possession, but also that it was heroin that he possessed. The latter burden not having been met, the judgment of conviction cannot stand. Cf. *People* v. *Rivas,* 5 Ill.2d 556.

Accordingly, the judgment of the criminal court of Cook County is reversed.

*Judgment reversed.*