People of the State of Illinois, Plaintiff-Appellee, v. Eugene Potts, Defendant-Appellant.

Gen. No. 66–45.

Fifth District.

September 9, 1966.

Arlie O. Boswell, Jr., and Hibben, Noyes & Bicknell, of Chicago, for appellant.

Robert V. Wilson, State's Attorney of Saline County, of Harrisburg, for appellee.

GOLDENHERSH, P. J.

On November 30, 1956, defendant, Eugene Potts, was indicted in a two-count indictment returned by the Grand Jury in and for Saline County. Count I charged defendant with the crime of rape. Count II, based on the Habitual Criminal Act, (c 38, § 602, Ill Rev Stats 1955) charged that defendant had previously been indicted for, and convicted of, the crime of armed robbery. The circuit court appointed counsel, defendant was tried by jury, and found guilty on both counts. In its verdict convicting the defendant of rape, the jury fixed the sentence at 3 years. Under the second count, the circuit court imposed a sentence of life in the penitentiary.

Upon defendant's petition filed pro se, the Supreme Court issued its writ of error and appointed counsel. Upon motion of The People, the Supreme Court, holding that the record presented no substantial constitutional question, transferred the cause to this court.

The complaining witness is the defendant's sister. Her testimony is to the effect that the rape occurred on October 1, 1956, that defendant had a gun, and that being in fear of his using the gun, she submitted to the act of intercourse. The occurrence was reported to the sheriff

on October 3, 1956, and to the State's Attorney on October 4, 1956.

Defendant has briefed and argued several alleged errors, only two of which need be discussed since, in our opinion, they require the reversal of the judgment.

The selection of a jury was commenced on January 2, 1957, and continued until court was adjourned for the day. On January 3, prior to resuming the selection of the jury, the court stated that he understood that defendant had requested that he be given a "lie detector test," that the State had agreed, and that the parties had stipulated that the result of the test be admitted in evidence. After some colloquy between the court and counsel, it was stipulated that if the operator who administered the test could make a written report, he would not be called to testify, and the report would be admitted in evidence.

On January 4, 1957, a report, identified as a People's Exhibit, was offered, and "pursuant to stipulation entered into between the parties," was admitted into evidence. The report recites that on January 3, 1957, in the Saline County Court House, defendant was given three polygraph tests. The portions of the report headed "Results" and "Conclusion" are as follows:

"RESULTS:

"The graphs in this subject's tests show a heavy emotional disturbance throughout. The graphs in the subject's tests further indicate deception to revelent (sic) questions and muscle movement which may or may not have been indulged in for the purpose of beating the test. The subject was requested to refrain from such acts at numerous intervals throughout his test. His graph recordings indicate that he was not too cooperative under test."

"CONCLUSION:

"After the studying of the graph in the subject case the examiner is of the opinion that the subject

303

lied under test. Namely, to having had sexual intercourse with his sister, Minnie, on or about October 1, 1956. Subject's graphs further indicate that he forced her to have sexual intercourse with him."

In People v. Zazzetta, 27 Ill2d 302, 189 NE2d 260, the Supreme Court reviewed many of the cases throughout the country involving the admissibility of the results of so-called lie-detector tests. A number of cases are discussed in an annotation in 23 ALR2d at page 1292. In State of New Mexico v. J. T. Trimble, 68 NM 406, 362 P2d 788, the Supreme Court of New Mexico held inadmissible the testimony of a witness who administered a polygraph test, even though the defendant had signed a waiver agreeing to be bound by the results of the test. In State of Arizona v. Valdez, 91 Ariz 274, 371 P2d 894, pursuant to a written stipulation entered into by the defendant, his counsel, and the county attorney, the defendant submitted to a polygraph (lie-detector) examination. The stipulation provided that the results of such examination would be admissible at the trial. The Supreme Court of Arizona, after an extensive review of the authorities said (371 P2d 894) at page 900: "Accordingly, and subject to the qualifications announced herein, we hold that polygraphs and expert testimony relating thereto are admissible upon stipulation in Arizona criminal cases. And in such cases the lie-detector evidence is admissible to corroborate other evidence of a defendant's participation in the crime charged. If he takes the stand such evidence is admissible to corroborate or impeach his own testimony.
"The 'qualifications' are as follows:

"(1) That the county attorney, defendant and his counsel all sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either defendant or the state.

304

"(2) That notwithstanding the stipulation the admissibility of the test results is subject to the discretion of the trial judge, i. e. if the trial judge is not convinced that the examiner is qualified or that the test was conducted under proper conditions he may refuse to accept such evidence.

"(3) That if the graphs and examiner's opinion are offered in evidence the opposing party shall have the right to cross-examine the examiner respecting:

"a. the examiner's qualifications and training;

"b. the conditions under which the test was administered;

"c. the limitations of and possibilities for error in the technique of polygraphic interrogation; and

"d. at the discretion of the trial judge, any other matter deemed pertinent to the inquiry.

"(4) That if such evidence is admitted the trial judge should instruct the jury that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged but at most tends only to indicate that at the time of the examination defendant was not telling the truth. Further, the jury members should be instructed that it is for them to determine what corroborative weight and effect such testimony should be given."

In this case, evidence highly prejudicial to defendant was admitted without inquiry as to the qualifications of the operator of the machine by means of which the test was given. How important it is that the operator be properly qualified, and the test be conducted under proper conditions, is apparent from the provision made by the Supreme Court of Arizona in People v. Valdez (supra) that notwithstanding the stipulation, in his discretion, the

trial judge may reject the evidence unless he is satisfied that the operator is properly qualified and the test was conducted under proper conditions. Recognition of the importance of these matters is further evidenced by the statement of the Supreme Court of Illinois, speaking through Mr. Justice Solfisburg (then Chief Justice) in People v. Zazzetta (supra) at page 309: "In the case at bar a letter was read to the jury, over objection, which clearly indicated that defendant lied when he denied the burglary. No evidence was introduced regarding the method of testing or the qualification of the operator. The expert was not available in person for cross-examination. This entire procedure is claimed to be justified by the oral agreement of the defendant, a man with an eighth-grade education, appearing without counsel prior to trial.

The scientific reliability of the polygraph has long been the subject of dispute among learned experts. Today we are not compelled to take sides in that argument which has not been presented to us. Suffice it to say, that it is common knowledge that the expertise of the operator and interpreter has substantial bearing on the reliability of the polygraph."

The Supreme Court, in People v. Kazmierczyk, 357 Ill 592, 142 NE 657, at page 597 said: "Courts are especially charged with the duty to carefully examine the evidence in rape cases, where, as has been justly observed by Lord Hale, an accusation is easily made, difficult to be proved, and still more difficult to be defended by one ever so innocent."

Ch 38, § 121-9, Ill Rev Stats 1965, provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court," and the stipulation for the admission of this evidence does not foreclose review. The People v. Bradley, 30 Ill2d 597, 198 NE2d 809.

We hold that the admission into evidence of the report of the polygraph test was prejudicial error requir-

ing reversal of the judgment. Since the conviction on the charge of rape must be reversed, there is no subsequent conviction to support the judgment based on the Habitual Criminal Act.

■ ■ We do not remand for a new trial for the reason that after a careful examination of the testimony, absent the evidence improperly admitted, we cannot say that the evidence is sufficient to remove all reasonable doubt of the defendant's guilt. The People v. Qualls, 21 Ill2d 252, 171 NE2d 612.

The testimony shows that the complaining witness, approximately one year prior to the occurrence, had been a patient at Anna State Hospital for the treatment of a nervous disorder, and that approximately two months prior to her confinement to the State Hospital, she had accused her father of an attempted sexual offense.

This history is illustrative of a problem which, from time to time, arises in cases involving prosecution for sex offenses, particularly in those instances where there is little or no corroboration of the testimony of the complaining witness. (See Ballard v. The Superior Court of San Diego County, 49 Cal Rptr 302, 410 P2d 838, and 3 Wigmore, Evidence (1940) § 924a and authorities discussed therein.)

We find no evidence corroborative of the complaining witness' testimony, and in our opinion, her testimony does not meet the requirement that the uncorroborated testimony of a prosecutrix in a rape case, to sustain a conviction, must be clear and convincing. The People v. Walden, 19 Ill2d 602, 169 NE2d 241.

For the reasons herein stated, the judgment of the Circuit Court of Saline County is reversed. The court commends and thanks appointed counsel for an able presentation of the issues on appeal.

Judgment reversed.

EBERSPACHER and MORAN, JJ., concur.