(No. 40729.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* EDWARD NELSON, Appellant.

*Opinion filed June 21, 1968.*

J. Waldo Ackerman, of Springfield, appointed by the court, for appellant.

Raymond L. Terrell, State's Attorney, of Springfield, (Richard H. Hollis and D. Bradley Blodgett, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Ward delivered the opinion of the court:

The defendant, Edward Nelson, was convicted in a bench trial in the circuit court of Sangamon County under two counts of an indictment charging him with violating section 37 of the Uniform Narcotics Drug Act. (Ill. Rev. Stat. 1963, chap. 38, par. 22—39.) He was sentenced to the penitentiary for concurrent terms of 1 to 3 years on each of the counts. The Appellate Court for the Fourth District affirmed the conviction on one of the counts and reversed the conviction on the other count. (82 Ill. App. 2d 236.) The defendant petitioned this court for leave to appeal, complaining that the pretrial lineup procedure and resulting identifications violated the defendant's constitutional rights. We granted the petition.

The count under which the defendant remains convicted, so far as is pertinent, charges that on March 4, 1965, Edward Nelson "committed the offense of Unlawful Acquisition of Drugs by Fraud and Deceit, in that he obtained four (4) ounces of Robitussin A.C. containing four (4) grains of codeine or any of its salts from Watts

Brother's Pharmacy * * * City of Springfield, by the concealment of a material fact, to-wit: failure to disclose that he obtained two (2) ounces of Paregoric containing four (4) grains of opium at Osco's Drug Store, * * * City of Springfield, * * * within forty-eight (48) consecutive hours * * *."

On March 4, 1965, between 6:00 and 8:00 P.M. a person identified as the defendant purchased 2 ounces of paregoric at the Osco Drug Store in Springfield from Steve Reggentin, a pharmacist. At that time the purchaser signed the name "Edward Nelson" in the store's exempt narcotic sales book and listed his address as 1604 E. Washington. Also on March 4, between 8:00 and 8:30 P.M., an individual, later found to have been the defendant, bought 4 ounces of Robitussin A.C., a trade name preparation used as a cough remedy, at Watts Brothers Pharmacy in Springfield from Leroy England, a salesclerk. The buyer signed the name "Edward Nelson" to the pharmacy's exempt narcotics sales book and listed 1604 E. Washington as his address. Another Watts Brothers employee, Loraine Drewett, witnessed this sale. Later, having noted the license plate number of the auto which the customer was driving, she entered such number in the store's exempt narcotics record beside the defendant's name and address.

On April 5, 1965, a State narcotics inspector, Robert Spoor, ascertained through the Osco and Watts Brothers exempt narcotics registers the two sales on March 4 of the paregoric and the cough remedy. Spoor testified that on the next morning, April 6, several hours before an attempted lineup at which the defendant was present, a warrant was issued for the defendant's arrest. The warrant was served on the defendant shortly after the lineup proceedings.

On April 6, the defendant, having been unable to post bail, was in the Sangamon County jail awaiting trial on an unrelated charge of armed robbery, of which he was

later found guilty. That afternoon, police attempted to arrange a lineup which would have been composed of the defendant, a Negro, and three or four other Negro prisoners at the city police station for viewing by Steve Reggentin and Leroy England, the store personnel who had made the March 4 sales concerned.

The record of the hearing on a motion to suppress filed by the defendant prior to trial discloses that upon his arrival at the stationhouse for the proposed lineup, the defendant requested and was granted an opportunity to confer by phone with the attorney who was representing him on the armed robbery charge. After consulting with the attorney, the defendant told the police that on the advice of counsel he was refusing to appear in a lineup. Counsel had apparently advised him that he need not and should not participate in the planned lineup. There is no indication from the record that the lawyer expressed a desire to attend the proposed lineup. The defendant persisted in his refusal to participate and declined to enter the room containing the lineup facilities. Reggentin and England were informed by the police that one of the proposed subjects for the lineup refused to participate. They were then escorted past the prisoner subjects who, except for the defendant, were at request of the police standing in a line against a wall. The defendant was sitting then on a stairway next to the other prisoners with his arms across his face. Having filed past, the witnesses, apparently, stood and peered back at the men for a few moments. Both Reggentin and England testified at the hearing on the motion to suppress that though the defendant had attempted to conceal his face they sufficiently observed his features and recognized him. The defendant testified that at one point an officer physically turned him toward the witnesses but neither witness recalled seeing any officer touch the defendant.

The trial court denied the defendant's motion to sup-

press, which sought to suppress evidence of the defendant's identification at the attempted lineup. However, at trial the State did not offer evidence that Reggentin and England had identified the accused in the police station. Reggentin and England did identify the defendant in the courtroom as the one who made the purchases alleged in the indictment.

In *United States* v. *Wade* (June 12, 1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, and *Gilbert* v. *California* (June 12, 1967), 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951, the United States Supreme Court ruled that a post-indictment pretrial confrontation for identification purposes is a critical stage of a prosecution at which an accused needs the presence of counsel and, thus, conduct of such an encounter by the police without notice to and in the absence of counsel denies an individual his sixth amendment right to the assistance of counsel made binding on the States by the fourteenth amendment. However, in *Stovall* v. *Denno,* 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967, the Supreme Court declared that the directions of *Wade* and *Gilbert* are to be prospective in application and can be invoked only in those cases which involve pretrial identification confrontations held in the absence of counsel after June 12, 1967. The court in *Stovall* recognized, though, that where, as here, a pretrial identification proceeding occurred on or before June 12, 1967, a defendant, who was without counsel, is free to establish, based on the totality of the surrounding circumstances, that the viewing of the accused was so wanting in fairness as to deprive him of due process of law. We believe that *Stovall* requires that a defendant so claiming must prove that "the confrontation conducted * * * was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." 388 U.S. at 301-2, 18 L. Ed. 2d at 1206, 87 S. Ct. at 1972.

The defendant complains here that under the facts of this case the attempted pretrial lineup which occurred served so to deprive him of due process of law. We do not agree.

The defendant's argument flies in the face of the record which clearly shows that the defendant was identified as the purchaser independently of and uninfluenced by any viewing at the attempted lineup. (See *United States* v. *Wade,* 388 U.S. at 239, 240, 241, 18 L. Ed. 2d at 1164, 1165, 87 S. Ct. at 1939, 1940.) The entries in the Osco and Watts Brothers pharmacies' exempt narcotics books presented in evidence showed that Edward Nelson of 1604 E. Washington had made both purchases on March 4, as charged. As to Osco Drugs, the testimony of Steve Reggentin, the pharmacist who waited on the defendant, demonstrated that his courtroom identification of the defendant was independent of any lineup identification. The testimony shows that he had known the defendant for about 5 months prior to the sale in question. He stated that Nelson came in the store "quite frequently" and that he had had contacts with the defendant "outside the store * * * on various occasions." As to the Watts Brothers Pharmacy sale, the clerk, England, not only required the defendant to sign his name and address in the exempt narcotics book but also required him to furnish personal identification, which the defendant did by exhibiting to England a driver's license. He estimated also that only two 4-ounce bottles of Robitussin A.C. were sold per week by his store. Too, Loraine Drewett, who had been employed by Watts Brothers Pharmacy for 15 years, was a witness to the sale but was not present at the attempted lineup. She testified that just after the purchase in question was made she recorded the auto license plate number of the car in which the defendant was driving as part of the previously described entry in the store's exempt narcotics register. She recorded the license number because, she testified, the defendant

"had been in several times purchasing Robitussin." Further, the owner of the auto with the license plate number which Mrs. Drewett recorded testified that the defendant frequently used her auto; that the defendant was living at her house on March 4, 1965; and that she lived at 1604 E. Washington which, as has been seen, was the address the defendant had given in the stores' exempt narcotics records.

It is plain that the identification of the defendant could be said to have been established apart from and independent of the attempted lineup. It is plain, too, and does not require discussion that if the defendant stood out, so to speak, and attracted attention at the lineup proceedings it was not because of any suggestive conduct by the police but was attributable to his own behavior of attempting to conceal himself.

As stated, at the time that the police sought to submit the defendant to a lineup he was in custody, having been unable to make bail, under an unrelated armed robbery charge. The defendant maintains that this constituted an invidious discrimination violative of due process, because other persons also awaiting prosecution, but who were at liberty on bond, could not have been subjected to a lineup. The argument is without merit. In *Rigney* v. *Hendrick* (3d cir.), 355 F.2d 710, *cert.* den. 384 U.S. 975, the defendant was compelled to participate in a lineup while he was being detained under a separate charge for which he had been unable to post bail. The court in *Rigney* rejected a claim, on equal-protection grounds, practically identical to the one made by the defendant here (accord *United States* v. *Evans* (3d cir.), 359 F.2d 776, *cert.* den. 385 U.S. 863, 951; *Gilbert* v. *United States* (9th cir.), 366 F.2d 923, 946, *cert.* den. 388 U.S. 922), and also expressly disapproved *Butler* v. *Crumlish*, 229 F. Supp. 565, which is here relied on by the defendant.

Also, the defendant did not have a right to refuse to submit to the proposed lineup. (See *Rigney* v. *Hendrick*

(3d cir.), 355 F.2d 710, 713, 714; *United States* v. *Chibbaro* (3d cir.), 361 Fed. 365; see also Wall, Eye-witness Identification in Criminal Cases (1965) p. 42, note 70.) As the Supreme Court of Minnesota observed " '[t]he Constitution confers no right of an accused to be immune from the eyes of his accusers.' " (*State* v. *Tahash* (1967), 278 Minn. 358, 154 N.W.2d 689, 691.) In *United States* v. *Wade*, the Supreme Court held that the exhibition of a criminal suspect at a lineup does not violate his privilege against self-incrimination. (388 U.S. at 221, 222, 223, 18 L. Ed. 2d at 1154, 1155, 87 S. Ct. at 1929, 1930.) In reaching this conclusion the court quoted from *Holt* v. *United States,* 218 U.S. 245, 54 L. Ed. 1021, 31 S. Ct. 2, where Mr. Justice Holmes said: "[T]he prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material." (218 U.S. at 252-253, 54 L. Ed. at 1030, 31 S. Ct. at 6.) The court in *Wade* concluded: "We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance. It is compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any knowledge he might have." 388 U.S. at 222, 18 L. Ed. 2d at 1154-1155, 87 S. Ct. at 1930.

Having considered the factual setting of this case in its entirety, we judge that the lineup proceeding here was not "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to deny the defendant due process of law.

The defendant presently stands convicted under count IV of the indictment which charged the acquisition of drugs by fraud and deceit. He alleges that the evidence presented pertained only to the different offenses charged

in counts I and II of the indictment, *i.e.,* unlawful possession of narcotic drugs, and so the verdict of guilty as to count IV is unsupported by the evidence. The defendant has failed to support and detail this argument and it must be regarded as being without merit. Reviewing the record we find abundant evidence to support the conviction under count IV of the indictment.

The defendant's contention that the State failed to prove that the preparations purchased by him were within the statute is without substance. The appellate court considered this issue and its opinion persuasively points out that the prosecution here sustained its burden of proof in this regard. It would not be helpful or appropriate to restate the expression of the appellate court.

The judgment of the Appellate Court for the Fourth District is affirmed.

*Judgment affirmed.*