UNITED STATES of America,
Appellee,

v.

Robert M. FRIEDLAND, Defendant,
Appellant.

No. 71–1071.

United States Court of Appeals,
First Circuit.

June 29, 1971.

Thomas R. McNaboe, Portland, Me., with whom Thompson, Willard, Smith & McNaboe, Portland, Me., was on brief, for appellant.

Peter Mills, U. S. Atty., for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

After a trial by jury the defendant was convicted of unlawfully delivering and disposing of a quantity of LSD in violation of 21 U.S.C. § 331(q) (2) (Supp. V, 1970). At trial, the prosecution proved that on March 5, 1970, defendant sold LSD to two government undercover agents in a motel room in Portland, Maine.

The principal issue in this appeal concerns the testimony of one Roger F. Canaff, a chemist from the Bureau of Narcotics and Dangerous Drugs, who testified that the substance which the defendant sold to the agents was in fact LSD. After being qualified as an expert to defendant's satisfaction, Canaff testified that he performed two tests on the substance submitted to him by the agents. The first, a fluorescent spectrum test, is a preliminary screening device. Since the drug tested positive, Canaff proceeded to another test known as thin layer chromatography. A thin layer of an absorbent known as silica gel is placed on a glass plate. Then, a small quantity of the unknown substance is placed on one part of the plate, and a quantity of known LSD on the other. After running this same test on a second plate and observing a similar chemical reaction, Canaff was able to conclude positively that the unknown substance was LSD.

Dr. Canaff admitted on cross-examination that he did not test the standard LSD used in the thin layer chromatography test prior to conducting that test. He stated that the batch from which the standard LSD had been drawn was tested by other chemists in the laboratory when the drug was first acquired by the Food and Drug Administration in 1965 and again in April 1969 when it was turned over to the Bureau of Narcotics and Dangerous Drugs. Canaff obtained the standard LSD for the instant test from a sealed brown glass vial stored in a laboratory vault, to which only eight chemists had access. He testified that in his opinion it was unnecessary to test the substance in this particular vial, because he had previously tested other vials from the same batch. When asked specifically why he did not test this particular vial, he responded,

, "It's not necessary. If it is done once, I know that the batch is reasonably well with the literature and the standards didn't change. * * * [The standard LSD] was taken from a sample in a similar vial with a similar lot number [to the LSD I had tested previously] so that in essence it's the same material just put into a different vial."

Defendant argues that this testimony should have been stricken on the ground that Canaff's conclusion that the standard LSD used in the thin layer chromatography test was in fact LSD was based on hearsay evidence. The trial court took the position that, "While

technically [Canaff's] knowledge of what this is is dependent on what somebody else determined at some prior time, certainly there's sufficient reliability in the testimony so that it must be and is, in the Court's view, clearly admissible." In general, "[e]xceptions to the hearsay rule * * * are deemed justified * * * [when] the circumstances assure the probable verity of the evidence." Thomas v. Hogan, 308 F.2d 355, 361 (4th Cir. 1962).

In the instant case, the limited access to the vault, the fact that the LSD standard used was stored under conditions in which temperature and freedom from moisture were controlled, and Canaff's testimony that he had tested other vials from the same batch and that the batches are internally consistent, eliminated the possibility of misidentification and alteration as a matter of reasonable probability. Cf. United States v. Capocci, 433 F.2d 155, 157 (1st Cir. 1970); Gass v. United States, 135 U.S.App.D.C. 11, 416 F.2d 767, 770 (1969). We note also that the batch number of this vial of standard LSD would itself have been considered of sufficient reliability to be admissible in evidence at trial under the federal business records exception to the hearsay rule, 28 U.S.C. § 1732(a).[1] This exception applies to "any writing or record, whether in the form of an entry in a book *or otherwise*." (Emphasis added.) Canaff's testimony made clear both that the batch number was recorded in the regular course of business and that it was the regular course of the laboratory's business to record such numbers. *Compare* Gass v. United States,

supra, 416 F.2d at 771–772, *with* Hagans v. Ellerman & Bucknall Steamship Co., 318 F.2d 563, 575 (3d Cir. 1963).

 Prior to trial, defendant moved to dismiss the indictment on the ground that the government had introduced evidence of electronic surveillance before the grand jury without complying with 18 U.S.C. § 2518(9) (Supp. V, 1970).[2] The prosecutor had informed defendant's counsel that the grand jury knew that one of the agents who purchased the LSD from defendant was "wired for sound," *i. e.*, had carried a bugging device on his person.

Defendant's initial complaint is that he should have been granted access to the grand jury minutes. The decision to release grand jury testimony is made in the first instance by the trial judge, based on an *in camera* inspection of the transcript. *See* Dennis v. United States, 384 U.S. 855, 869, 86 S.Ct. 1840, 16 L. Ed.2d 973 (1966). In the instant case the judge reviewed the relevant portions of the testimony. The prosecutor indicated to him the testimony that made reference to electronic surveillance, and that testimony was read to defendant's counsel.[3] The reference to electronic surveillance was made in passing, and the government stated that no evidence obtained by means of electronic surveillance was introduced for its probative value. Under these circumstances, we find no abuse of discretion in the judge's decision to withhold other portions of the transcript. Defendant's reliance on Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), is misplaced inasmuch as that

---

1. This exception has been interpreted to apply to government agencies as well as private business. La Porte v. United States, 300 F.2d 878, 880 (9th Cir. 1962).

2. 18 U.S.C. § 2518(9) (Supp. V, 1970) provides in relevant part:
 "The contents of any intercepted wire or oral communication or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial,

hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved. * * * "

3. A government agent testified regarding a conversation with the defendant shortly after his arrest: "I told him he was a liar because I had seen him there [at the motel room] the night before and had listened to him over the radio in a conversation."

case involved evidence introduced at trial, not grand jury testimony.

█ We also agree with the trial judge's conclusion that 18 U.S.C. § 2518(9) was probably not intended to apply to grand jury proceedings. The use of evidence before the grand jury that would be inadmissible at trial is generally not grounds for reversal. *See* United States v. Blue, 384 U.S. 251, 255, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966); Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); Truchinski v. United States, 393 F.2d 627 (8th Cir.), cert. denied, 393 U.S. 831, 89 S.Ct. 104, 21 L.Ed.2d 103 (1968). Furthermore, the evidence at issue in this case does not appear to be subject to the Wire Interception and Interception of Oral Communications Law, of which 18 U.S.C. § 2518(9) is a part. Section 2511(2) (c) of that law provides:

> "It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."

And the Supreme Court has recently held in United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), that bugging devices carried by government agents with whom defendants have dealt voluntarily "do not invade the defendant's constitutionally justifiable expectations of privacy." *Id.* at 751, 91 S.Ct. at 1126.

█ Finally, defendant argues that the actions of the government in this case constituted entrapment as a matter of law. We do not agree. While there was some evidence of "unreadiness" on defendant's part, the jury was free to disbelieve that evidence and the prosecution's case provided ample basis for a conclusion that defendant was not entrapped. United States v. Stamas, 443 F.2d 860 (1st Cir. 1971); Kadis v. United States, 373 F.2d 370 (1st Cir. 1967).

Affirmed.