THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN BERTRAM, Defendant-Appellant.

Third District   No. 76-194

Opinion filed January 11, 1977.

Robert Agostinelli, Verlin Meinz, and Karen Butler, all of State Appellate Defender's Office, of Ottawa, for appellant.

Martin Rudman, State's Attorney, of Joliet (Bart Markese, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
Defendant John Bertram appeals, following a jury trial in the Will

County Circuit Court, from a conviction of unlawful delivery of lysergic acid diethylamide (commonly called LSD), a controlled substance, in violation of section 401(a)(8) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1401(a)(8)). In the appeal, defendant asserts (1) that the evidence adduced at the trial was insufficient to prove his guilt beyond a reasonable doubt, and (2) that the admission of certain testimony by the State's expert witness, not objected to in the trial court, was error which should be considered by this court, for the reason that such testimony contained prejudicial hearsay.

From the record it appears that John Bertram arranged to meet Gary Armstrong, an agent of the Metropolitan Area Narcotics Squad, at a restaurant for the purpose of selling drugs to Armstrong. At that meeting, Armstrong purchased a clear plastic bag containing about 100 purple tablets. When the meeting ended, defendant Bertram asked if he could contact Armstrong in the future. For this purpose, defendant and Armstrong exchanged phone numbers.

Between April 8 and May 2, 1975, Armstrong made five or six telephone calls to defendant's number, and actually talked to defendant on three occasions. On the first of these calls, Armstrong asked defendant why he had not been contacted by defendant. He informed the defendant, at the time that he, Armstrong, desired to purchase more drugs. During the last of the conversations, a meeting was arranged at which defendant was to sell Armstrong 100 tablets of LSD. Defendant and Armstrong met at a bar, where defendant had insisted on talking to Armstrong, before selling him the drugs. After they had talked, the two proceeded to a parking lot located 100 yards west of the bar. Armstrong gave defendant $750, which defendant counted and placed on the grill of Armstrong's truck. Defendant then directed Armstrong to a blue automobile in the parking lot. The driver of the blue automobile then told Armstrong that 10 plastic bags containing the orange tablets could be found under an adjacent vehicle. Defendant was then arrested.

On this appeal, defendant does not contest the commission of the acts which were recited above but, rather, the thrust of his arguments concern the question of whether or not the substance which was delivered to Armstrong was LSD. The substance was subjected to three types of tests to establish the presence of controlled substances. First, Armstrong himself conducted a Voltex test upon the substance at the time of defendant's arrest, which test indicated the presence of LSD. The Voltex test, however, is, concededly, a primitive color test which is not generally used in a laboratory to prove criminality.

Other tests, however, were performed by Sandra Rodeghero, who was an expert witness for the State. She testified that she conducted a color test using Erlic's reagent and a series of three thin-layer chromatographs

(TLC's) upon the substance delivered by defendant. The color test using Erlic's reagent, a more sophisticated test than the Voltex test, also indicated the presence of LSD. Since any ergot alkaloid containing an indole group, a number of which are not controlled substances, will produce the same results as LSD in the color test using Erlic's reagent, other tests were made by Rodeghero.

Thin-layer chromatography is a comparative test which requires the use of a standard, a substance that has been positively identified, with which the unknown substance can be compared. In the TLC procedure, small amounts of the test substance are taken up in a solvent, and spotted near the bottom of a glass plate coated with an inert material. The solvent dissolves, leaving the test substance as a residue. The glass plate is then dipped in another solvent, and the solvent is allowed to run up the plate. Since different compounds, or test substances, have different relative affinities for the absorbent coating on the glass plate, the solvent will carry different compounds to different heights on the plate. After the solvent evaporates, the height to which the solvent carried the compound is visible as a spot when the plate is viewed under ultraviolet light. This procedure is performed for a known substance, or standard, and for the test substance. The test results are then compared to determine whether the test substance ran to the same height as the standard.

At the trial, Rodeghero testified that she conducted three series of TLC's. Each series required performance of the test procedure upon the substance delivered by defendant and upon a standard, which was purchased from Blen Laboratory and labeled LSD. Each series used a different test solvent upon the treated plates. Rodeghero tested in this manner the tablets purchased from defendant which weighed a total of 59 grams. Rodeghero testified at the trial that in her opinion the substance she had chemically analyzed was LSD.

The cross-examination of Rodeghero was conducted by a law student, who possesses a Ph.D. in chemistry and who was assisting defense counsel at the trial. On cross-examination, Rodeghero conceded that methods of positively identifying the substance, as opposed to negatively testing the substance by a process of elimination, are available, and that further tests, in addition to TLC, are used by the Drug Enforcement Administration and Department of Justice to identify LSD.

On direct examination, the expert testified to having applied a color test using an Erlic reagent and a series of three TLC's to the substance delivered by defendant. At the close of the direct examination, when she was questioned, she stated in response to question as whether the substance in the plastic bags is or is not LSD, that it was in fact LSD.

On cross-examination, while the expert Rodeghero conceded that indole and ergot alkaloid compounds, some of which are uncontrolled

substances, react in the same manner as LSD to the Erlic color test, she had performed additional tests which convinced her that the substance was LSD. Defense argued that a test using the infrared spectrum could be used to identify various drugs, including LSD, but the expert Rodeghero stated that the use of the infrared spectrum testing was not necessary to identify LSD. The witness stated on cross-examination that while uncontrolled compounds may give the same reaction to the color tests as LSD, the series of TLC's led the expert to conclude that the substance contained LSD. Iso-LSD is an uncontrolled substance which is sometimes produced by the same process which is used to manufacture LSD. The witness testified that in the third TLC system, iso-LSD would not run the same distance (produce the same test results) as LSD.

In answer to a question as to whether iso-LSD was present in the substance tested, the expert witness stated that since she had not tested for iso-LSD, she could not state that that substance was present. She testified that to rule out the possibility of the presence of other compounds in addition to LSD, would require the running of a standard of those compounds. The witness finally concluded by stating on redirect examination that no other tests were necessary to determine that the substance was LSD other than the tests which she had made and that based on her expert opinion, the substance was LSD in the pills which were obtained from defendant.

■■ From the record, therefore, we conclude that the testimony presented was sufficient to support the jury determination that, beyond a reasonable doubt, the delivered substance was LSD. The TLC systems comprise a comparative test and the fact that the witness could not state that certain other compounds were not present in the test substance is not compelling proof that the witness did not know if LSD was in the sample. The expert indicated that while one or two of the TLC systems may not be sufficient to identify LSD, in the expert's opinion, three TLC systems were sufficient, in combination, to identify LSD and her conclusion remained unshaken on this issue.

The Illinois Supreme Court in *People v. Sanford* (1962), 24 Ill. 2d 365, 368, 181 N.E.2d 118, stated:

> "The burden is on the prosecution in a criminal case to establish beyond a reasonable doubt not only a defendant's guilt, but also the essential elements of the crime. (*People v. Corbishly*, 327 Ill. 312, 329; *People v. Hein*, 315 Ill. 76, 81.)"

In the *Sanford* case the court went on to say that in order to prove the *corpus delicti* it was necessary for the prosecution to prove that defendant actually had heroin in his possession. In reviewing the determination that a substance was LSD, the court in *People v. Stringer*, 52 Ill. 2d 564, 568-69, said:

"[w]e may not substitute our judgment for that of a jury on questions involving the weight of the evidence or the credibility of the witnesses [citations], and we will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. [Citations.]"

In the cause before us, the evidence was not so improbable as to raise a reasonable doubt of guilt on this issue.

In *People v. Harrison* (1962), 26 Ill. 2d 377, 186 N.E.2d 657, the defendant, in a bench trial, admitted that he sold a substance to a narcotics agent as heroin, and received the going price therefor. The defendant claimed, however, that the substance which was sold was actually nonnarcotic which he had purchased in a drug store. The arresting agent had conducted a field test on the substance which test had indicated the presence of an opium derivative. The Illinois Supreme Court in that case upheld the defendant's conviction and stated (26 Ill. 2d 377, 380):

"Here the only testimony disputing the People's proof is the statement of defendant, an admitted addict, that he sold only dormin [a non-narcotic drug]."

In *People v. Taylor* (5th Dist. 1975), 29 Ill. App. 3d 1066, 322 N.E.2d 188, the defendant argued that the State had not sufficiently proven the identity of a substance, delivered by defendant, as LSD. The argument in the *Taylor* case, as in the instant case, addressed the weight and credibility, and not the admissibility, of the testimony by the State's expert witness. The appellate court in *Taylor*, after citing other cases and noting that defendant had not objected to the expert's testimony at the time of the trial, stated (at page 1068):

"Since the testimony of LeCocq [the expert witness] is not so improbable to raise a reasonable doubt as to the defendant's guilt and because this objection was presented for the first time on appeal, this court will not reverse the conviction."

In the instant case, the substance delivered was subjected to three types of tests for the presence of LSD. The tests were admittedly of varying sophistication. All the tests, however, indicated the presence of LSD. The State's expert witness testified that in her opinion the series of TLC's were sufficient to identify the substance as LSD, and she concluded that the substance delivered by defendant did contain LSD.

Defendant additionally argues that he was prejudiced by the admission at the trial of what he described as hearsay testimony. Defendant concedes that no objection was made to this testimony at the trial, but argues that this court should nevertheless consider his contention. The testimony now objected to involves the expert's testimony relating to the thin-layer chromatography (TLC) testing process. The TLC process

necessitates the use of a standard, as we have indicated, which is a known substance. This is used for comparison as against the substance being tested. In the tests conducted by the expert witness in the instant case, LSD was obtained from a commercial laboratory and was used as a standard as against the substance delivered by defendant. Defendant now argues that the expert's testimony that the standard was LSD was hearsay, since the expert had no knowledge independent of the labeling on the bottle that the standard was LSD.

In support of his argument, defendant cites *People v. Ransom* (5th Dist. 1975), 33 Ill. App. 3d 503, 341 N.E.2d 752, *appeal allowed* (1976), 62 Ill. 2d 591. In the *Ransom* case the appellate court ruled that the trial court had committed reversible error by admitting, over defendant's objection, testimony of a coroner's physician as to the identity of the subject of his post-mortem examination. The physician had testified to the name on the tag attached to the body upon which he performed the autopsy. Since the physician had no independent knowledge as to the identity of the corpse, such testimony was held as inadmissible hearsay. The *Ransom* case, however, is clearly distinguishable from the instant case in that defendant here did not object at the trial to the testimony relating to the fact that the standard was LSD. The Illinois Supreme Court, on this issue, in *People v. Thompson* (1971), 48 Ill. 2d 41, 45-46, 268 N.E.2d 368, stated:

> "Objections to evidence may be waived by failure to interpose proper objections in apt time, even though based upon constitutional grounds. (*People v. Trefonas*, 9 Ill. 2d 92, 98; *People v. McCrimmon*, 37 Ill. 2d 40, 47; *People v. Hicks*, 35 Ill. 2d 390, 395; see *Mapp v. Ohio*, fn. 9, 367 U.S. 643, 659, 6 L. Ed. 2d 1081, 1092, 81 S. Ct. 1684, 1693.) The rationale underlying the procedural waiver doctrine is a sound one, based upon the need for timely resolution at trial of evidentiary questions. The salutary consequence of the waiver rule is that 'A party cannot sit by and permit evidence to be introduced without objection and upon appeal urge an objection which might have been obviated if made at the trial.' (*People v. Trefonas*, 9 Ill. 2d 92, 98.)"

■■ This court considered the application of Supreme Court Rule 615(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a)) in *People v. Johnson* (3d Dist. 1975), 28 Ill. App. 3d 139, 327 N.E.2d 535. In that case we stated (at page 144):

> "The 'plain error' doctrine does not require that a reviewing court consider all errors involving substantial rights even though not brought to the attention of the trial court. [Citation.] The rule is permissive, and it is within the discretion of the reviewing court whether to consider an error not raised in the trial court."

■■ We note that in the case at bar, defense counsel, in spite of

extensive cross-examination of the expert with regard to testing procedures, did not object to the expert's testimony as to the composition of the standard obtained from a commercial laboratory. Objection by the defense at the trial could have prompted the State to conduct additional tests as to the identity of the substance used as a standard obtained from the laboratory. Additionally, the chemical standard used by the expert was made available to the defense for examination and testing, and still remains available to the defendant. In such circumstances, in the exercise of our discretion, we have determined that we should not now consider the objection raised by defendant on review.

For the reasons stated, therefore, the judgment of the Circuit Court of Will County is affirmed.

Affirmed.

STOUDER and SCOTT, JJ., concur.