THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES BRANNON, Defendant-Appellant.

Fifth District   No. 75-537

Opinion filed March 17, 1978.

G. MORAN, J., dissenting.

Michael J. Rosborough and Ann Hilbert Blandford, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

James E. Dull, State's Attorney, of Mt. Vernon (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

This is an appeal from a judgment of conviction entered after a bench trial in the Circuit Court of Jefferson County. Defendant Charles Brannon was found guilty of unlawful delivery of a controlled substance in violation of section 401(c) of the Controlled Substances Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1401(c)) and was sentenced to a term of three to nine years in the penitentiary. He contends the failure to establish beyond a reasonable doubt that the substance sold was lysergic acid diethylamide (LSD) or any other controlled substance requires reversal of judgment.

According to an undercover agent for the Illinois Bureau of Investigation, on March 21, 1975, defendant sold him 10 tablets which Brannon stated were lysergic acid diethylamide (LSD). According to the agent the defendant sold to him 10 tablets which the defendant referred to as 10 "hits" of LSD or "mycrodot acid" for $2.50 per tablet. These tablets were later tested by a chemist employed by the Illinois Bureau of Investigation, who testified that he performed two tests on the tablets. The first test was the Ehrlich's reagent. This is a screening test, and the color change in the substance indicated that it might contain LSD. The second test performed was thin layer chromatography. In these tests, the substance was placed in three different solvents and compared to a standard. (See *People v. Bertram*, 45 Ill. App. 3d 70, 358 N.E.2d 1357 (1977), for a detailed description of thin layer chromatography.) The substance tested compared positively to the standard purported to be LSD. The chemist testified that the standard was acquired from the Federal government by his supervisor, but he did not testify to testing independently the standard.

The defendant contends that the substance sold was not proved to be LSD, or any other controlled substance, beyond a reasonable doubt. He argues that the chemist's conclusion that the tablets contained LSD was without foundation because it was based on comparison with an unknown substance. Defendant also contends that his statement to the undercover agent that the tablets were LSD is insufficient to prove that the substance was a controlled substance.

■■ In a criminal case, the burden of proof rests upon the State. The State must establish, beyond a reasonable doubt, not only the defendant's guilt, but also the essential elements of the crime. (*People v. Sanford*, 24 Ill. 2d 365, 368, 181 N.E.2d 118, 119 (1962); *People v. Corbishly*, 327 Ill. 312, 158 N.E. 732 (1927).) Thus, in a prosecution for unlawful delivery of a controlled substance, the prosecution must establish beyond a reasonable doubt that the substance delivered was in fact a controlled substance. *People v. Bertram*, 45 Ill. App. 3d 70, 358 N.E.2d 1357 (1977); *People v. Scott*, 22 Ill. App. 3d 770, 317 N.E.2d 736 (1973).

The reviewing court may not substitute its judgment for that of the trier of fact on questions of the weight of the evidence or the credibility of witnesses and the court will not reverse unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Stringer*, 52 Ill. 2d 564, 568-569, 289 N.E.2d 631, 634 (1972); *People v. Taylor*, 29 Ill. App. 3d 1066, 332 N.E.2d 188 (1975).) The admissibility of evidence, however, if properly raised, is a question of law for the reviewing court. (*People v. Bertram*, 45 Ill. App. 3d 70, 358 N.E.2d 1357 (1977).) Defendant contends the failure to establish the standard used to be LSD renders the evidence of the chromatography test inadmissible.

Defendant does not challenge the qualification of the witness or the validity of the thin layer chromatography test. Although the test has been the subject of some criticism (see B. Stein *et al., An Evaluation of Drug Testing Procedures Used By Forensic Laboratories and The Qualifications of Their Analysts*, 1973 Wis. L. Rev. 727, 747), it is a standard test employed by experts in this field. Instead, he challenges the failure to establish the standard as LSD and argues that this renders the result of the particular test inadmissible. Because the chemist's testimony as to the standard relied on information from his supervisor who apparently received the standard from the Federal government, the objection is raised on hearsay grounds.

Few cases have analyzed the admissibility of the thin layer chromatography test based on objections to the standard used. In *United States v. Hollman*, 541 F.2d 196 (8th Cir. 1976), the witness admitted his unfamiliarity with the method by which the Drug Enforcement Administration determined the standard to be heroin. However, because the standard was tested as a sample and compared to prior standards at the time of its receipt, the court held the evidence admissible. Rule 703 of the Federal Rules of Evidence expressly provides that an expert may base his opinion on data not otherwise admissible if it is of a type reasonably relied on by experts in the field. The testing of the standard at the time of its receipt established the indicia of trustworthiness necessary to justify reliance by the expert. Of course, testing by reference to some prior standard always places reliance on the identity of the prior standard. Because thin layer chromatography involves a comparison of the reaction of an unknown and a standard in a solvent, proof of the identity of the standard could involve an endless process.

In *United States v. Friedland*, 444 F.2d 710 (1st Cir. 1971), the witness had not personally tested the standard, but other chemists in the Bureau of Narcotics and Dangerous Drugs had tested the standard on two separate occasions, although the precise manner of testing the standard was not made clear. The trustworthiness necessary for admission was

supplied by the separate testings. The marking of the particular standard by the chemists after testing was also admissible as a business record within the meaning of 28 U.S.C. §1732(a).

In *People v. Bertram*, 45 Ill. App. 3d 70, 358 N.E.2d 1357 (1977), the issue of the identity of the standard as LSD was waived by the failure to object at the trial. Left only with the issue of weight and credibility of the evidence, the appellate court affirmed.

In this case the issue was properly preserved by timely objection in the trial court. Unlike the Federal cases previously noted, evidence of any testing of the standard at the time of its receipt is completely lacking. The chemist did not testify to having personally tested and compared the standard to previous standards. Nor did the chemist testify to the testing and marking of the standard by other IBI chemists at the time of its receipt. Other than his statement that the standard was obtained from the Federal government by his supervisor, the chemist had no knowledge of the actual content of the substance.

■■ Professor Wigmore in discussing scientific testing states that the expert, of necessity, relies on the accuracy of instruments used, and thus to an extent hearsay, but notes that it is not "feasible for the professional man to test every instrument himself." (2 Wigmore, Evidence §665a (3d ed. 1940).) In a sense the standard employed here was like an instrument. It was furnished by the Federal government and represented to be a pure sample of LSD; it was supplied expressly to be used in chemical testing for the presence of LSD. Its source and purpose of use lend a certain *prima facie* reliability that it was that which it was represented to be. In *People v. Nelson*, 82 Ill. App. 2d 236, 225 N.E.2d 820 (4th Dist. 1967), *aff'd*, 40 Ill. 2d 146, 238 N.E.2d 378 (1968), the court concluded that it was sufficient proof that a certain drug was what it was represented to be, that it was sold by a reputable pharmaceutical company and labeled as the drug in question.

■■ Furthermore, we are convinced that the mechanics of the thin layer chromatography test is compelling circumstantial evidence that the substance sold was LSD, without regard to any direct proof of the identity of the standard as LSD.

It is clear that the identity of the illegal substance may be proved by circumstantial evidence. (*People v. Robinson*, 14 Ill. 2d 325, 153 N.E.2d 65 (1958); *People v. Binkley*, 25 Ill. App. 3d 27, 322 N.E.2d 514 (5th Dist. 1975); *United States v. Agueci*, 310 F.2d 817 (2d Cir. 1962).) Here, the chemist performed three thin layer chromatography tests. In each test the substance sold as LSD and the standard reacted to the solvent in a positive manner indicating that the substance sold as LSD and the standard were the same substance. It would seem beyond chance that the standard was not LSD when the substance represented by the defendant as LSD

reacted in the same manner in three separate tests with the standard. The two substances were the same in the opinion of the expert. If not LSD, then what? It would be an extraordinary coincidence that by chance some other identical chemical compound composed the substance sold by the defendant as LSD and the standard furnished by the Federal government as LSD. Certainly the improbability of such an extraordinary circumstance would warrant the jury concluding beyond a reasonable doubt that the substance was LSD.

For the reasons stated, the judgment of the Circuit Court of Jefferson County is affirmed.

Affirmed.

EBERSPACHER, P. J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:

Under the facts of this case the indicia of trustworthiness necessary for admissibility was not met. The State may not rely on the business records exception, or any other hearsay exception, unless the proper foundation for admissibility, the circumstantial probability of trustworthiness, is established. *People v. Gauer*, 7 Ill. App. 3d 512, 288 N.E.2d 24.

The parties in this case did not stipulate that the standard was LSD and the State did not establish that it was in fact LSD. The chemist's testimony that the standard was supplied by the Federal government does not, by itself, establish that the standard was in fact LSD. The evidence of the thin layer chromatography test was thus inadmissible.

In *People v. Hammond*, 115 Ill. App. 2d 347, 253 N.E.2d 29, an extra-judicial statement of a co-defendant which inculpated the defendant was erroneously admitted. Without the extra-judicial statement, the evidence was insufficient and the conviction was reversed without remand.

In *People v. Potts*, 74 Ill. App. 2d 301, 220 N.E.2d 251, where the failure to inquire into the qualifications of a polygraph operator rendered the evidence inadmissible, the court found the remaining evidence insufficient to remove all reasonable doubt and the conviction was reversed outright. And where a motion to suppress evidence obtained by an illegal search is improperly denied, the proper course is reversal without remand where the remaining evidence is insufficient to convict. *People v. Catavdella*, 31 Ill. 2d 382, 202 N.E.2d 1; *People v. Johnson*, 38 Ill. 2d 399, 231 N.E.2d 447.

Without the evidence of the thin layer chromatography test, the evidence is insufficient to establish that the substance delivered was in fact a controlled substance.

I would reverse.