THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEFFREY VANCE, Defendant-Appellant.

Fourth District   No. 14048

Opinion filed August 7, 1979.

Michael L. Pritzker, David M. Schneider, Roderick F. Mollison, and David J. Polan, all of Pritzker, Glass and Shapiro, Ltd., of Chicago, for appellant.

Ronald Dozier, State's Attorney, of Bloomington (James E. Hinterlong, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

On August 27, 1976, defendant was convicted following a bench trial of the unlawful delivery of a controlled substance in violation of section 401(a)(8) of the Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1401(a)(8)). Defendant was sentenced to a term of 22 to 66 months' imprisonment. That sentence was to run concurrently with a sentence of 1 1/3 to 4 years' imprisonment rendered in a previous case. In defendant's appeal of that previous case, his conviction was affirmed by this court, but his sentence of 1 1/3 to 4 years was reversed and remanded for resentencing. *People v. Vance, aff'd in part, rev'd in part sub nom. People v. Honn* (1977), 47 Ill. App. 3d 378, 362 N.E.2d 90.

In a Rule 23 order (58 Ill. 2d R. 23), this court reversed defendant's conviction in the present case and remanded for a new trial based on the trial court's denial of a motion for substitution of judges and our decision in *Honn*. Upon appeal to the supreme court, in *People v. Vance* (1979), 76 Ill. 2d 171, 390 N.E.2d 867, this court's Rule 23 order was reversed and the

case was remanded to us to consider defendant's other allegations of error.

On October 3, 1974, Illinois Bureau of Investigation (IBI) Agents Dennis Higgins and Del Principe met with Dan Hunt and the defendant to purchase "windowpane." The agents paid $750 for a thousand units of the substance which the State alleged was lysergic acid diethylamide (LSD).

Defendant argues that, at the trial, the State failed to establish a continuous chain of custody of the substance introduced as People's exhibits Nos. 1 and 2, and that it was error to admit those exhibits into evidence. After the substance was taken from defendant, Agent Higgins took it to Springfield where it was placed in an IBI locker. The next morning, Higgins removed the substance from the locker and took it to the Springfield Crime Laboratory where it was placed in a holding locker. Michael Galco, a chemist for the IBI, took the substance from the locker and placed it in a vault until October 15, 1974, when he began tests on it. After the tests were completed, Galco returned the substance to Higgins, who took it to the IBI office in Springfield and placed it in the custody of Mr. Osmer, the vault custodian.

Defendant does not claim that the chain of custody was broken before the exhibits were analyzed by the chemist. Defendant argues that because Osmer failed to testify, a break in the chain of custody occurred between the time the substance was given to Osmer by Higgins and the time the substance was removed by Osmer and introduced as exhibits at trial.

■■ In *People v. Anthony* (1963), 28 Ill. 2d 65, 190 N.E.2d 837, defendant claimed that an exhibit was inadmissible because there was no testimony by the custodian who received and stored the exhibit prior to the time it was analyzed by the State's chemist. The court rejected defendant's claim, stating that there was no indication that the evidence had been tampered. In the present case, the most critical period in the chain of custody was the period prior to the testing of the substance by the State's chemist. Defendant has not claimed that any actual tampering or substitution of the substance was made. The testimony in the present case indicates that the exhibits were sealed and carefully handled by all participants. We hold that the testimony pertaining to the chain of custody, in absence of any claim of tampering, is sufficiently reliable for admission into evidence, albeit a perfect chain of custody was not shown. *Anthony; People v. Marquis* (1974), 24 Ill. App. 3d 653, 321 N.E.2d 480.

Defendant makes several arguments regarding the reliability of the testing procedure employed by the State's chemical expert, Michael Galco. Defendant argues that the tests did not prove beyond a reasonable doubt that the substance which was delivered by defendant was LSD.

The first test administered by Galco was Ehrlich's reagent. LSD is a compound of indole compounds, and Ehrlich's reagent is a screening test which will yield a positive reaction only if indole compounds are present in the sample. There are other compounds besides LSD which will trigger a positive reaction to Ehrlich's reagent so the test does not conclusively establish that a particular substance is LSD, but it does narrow down the possibilities of what the unknown substance is.

The second test conducted by Galco was a thin layer chromatography (TLC). TLC is a test which requires the use of a reference sample, which has been positively identified, to be compared to the unknown substance being tested. Galco testified that the reference sample used by him was LSD. The reference sample was tested against a second reference sample to confirm that it was, in fact, LSD. Defendant objected to the introduction of this testimony on hearsay grounds because Galco did not state that he personally received the reference samples from the Federal Drug Enforcement Agency, nor did he know when the samples were received by the laboratory. From the record, we conclude that Galco's testimony pertaining to the reference samples and to Ehrlich's reagent was sufficiently reliable for the trial court to consider. *People v. Bertram* (1977), 45 Ill. App. 3d 70, 358 N.E.2d 1357; *People v. Brannon* (1978), 59 Ill. App. 3d 531, 375 N.E.2d 840.

The TLC test is conducted by putting a drop of the known and a drop of the unknown substance at the bottom of a test plate. The plate is then placed in a series of solvents in a sealed tank. Through capillary action, the solvents will carry different compounds to different heights on the plate. The plates are then removed from the solvents and are observed under an ultraviolet light. If the known substance and the unknown substance travel the same height, it is likely the substances are the same.

Galco testified that he took 11 samples of the unknown substance and compared them in the TLC test with an LSD sample and samples of lysergic acid and lysergic acid amide. After the plates were removed from the solvents and placed under an ultraviolet light, Galco sprayed them with Ehrlich's spray. The 11 unknown samples turned a light purple color and corresponded to the LSD standard and not to the lysergic acid and lysergic acid amide standards. Based on these tests, Galco was of the opinion that the substance taken from defendant was LSD.

Defendant argues that this procedure may have been contaminated. The substance was delivered to Galco for testing on small plastic squares. Galco removed the substance from the square by using chloroform, rather than scraping the substance off the squares. Defendant argues that by using chloroform, Galco might also have removed any substance contained in the plastic square itself. Defendant has not shown that there

was any substance on the small plastic square that would have reacted the same way in the TLC test as the LSD sample did. There is no indication that the test was, in fact, contaminated and Galco testified that he took precautionary measures to ensure against contamination by the chloroform. *Cf. People v. Crawford* (1974), 23 Ill. App. 3d 398, 318 N.E.2d 743.

Defendant's expert chemist, as well as the State's chemist, Galco, testified that it was possible to obtain a positive result in the TLC test with a sample that was not LSD by manipulating the solvents used in the testing procedure. Defendant now argues that the test results are unreliable because solvents that were used were chosen by Galco. However, defendant does not allege that Galco manipulated the test by his choice of solvents, nor did defendant indicate by his witness that the solvents used by Galco would give inaccurate results.

After the TLC was conducted, Galco observed that both the unknown substance and the LSD standard had reached the same height on the test plate. Defendant objected that this testimony should not have been admitted because Galco did not measure the markings on the test plate with a ruler. Defendant's objection goes only to the weight of the evidence, not to its admissibility. (*People v. Taylor* (1975), 29 Ill. App. 3d 1066, 332 N.E.2d 188.) It was proper for Galco to testify that he observed that the test results indicated that both substances had reached the same height on the test plate.

In each test, the unknown substance gave indications that it was LSD. It would be a highly unlikely situation for the substance taken from defendant to have been something other than LSD. It was for the trial court to weigh the evidence and judge the credibility of the witnesses and we find that the evidence was sufficient to support its decision beyond a reasonable doubt. *Brannon.*

Defendant has also made arguments that his cross-examination of Galco was restricted but these arguments merit no discussion inasmuch as they did not in any way prejudice the result. Accordingly, defendant's conviction is affirmed.

The supreme court, in remanding the present case to this court, directed that if defendant's conviction is affirmed, this case is to be remanded to the circuit court of McLean County and defendant is to be resentenced by a judge other than Judge Dearborn.

Conviction affirmed; remanded with directions.

TRAPP and MILLS, JJ., concur.