(35988

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES HARRISON, Plaintiff in Error.

*Opinion filed November 30, 1962.*

SCHAEFER, HERSHEY and KLINGBIEL, JJ., dissenting.

JOHN L. FLYNN, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and RUDOLPH L. JANEGA and DEAN H. BILTON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

James Harrison was convicted in the criminal court of Cook County by bench trial of the unlawful sale and possession of narcotic drugs, and was sentenced to a term of from ten to fifteen years in the Illinois State Penitentiary. On this writ of error he contends the People failed to prove beyond a reasonable doubt that the defendant sold a narcotic drug, and that the court erred in receiving a chemist's report into evidence.

The alleged sale of narcotics took place on December 1, 1958, in Harrison's apartment in Chicago. At about

1:30 P.M., Joseph Arpaio, a Federal narcotics agent, accompanied by one Sanborn, a narcotics user, went to the defendant's apartment, and was there introduced by Sanborn to defendant as a person interested in buying narcotics. Arpaio asked defendant if he sold "stuff," meaning heroin, and defendant, according to Arpaio, answered, "Yes, I sell the best stuff around." Defendant testified he said only, "I will try." Arpaio wanted half an ounce, and when defendant said he could only get it in $5 packages, Arpaio said he wanted a half ounce as a whole. Apparently the agreed price was $80, which was paid to defendant in currency, the serial numbers having been recorded. Defendant then left about 1:40 P.M. telling Arpaio to wait. When defendant had not returned by 4:30 P.M., Arpaio and Sanborn left and met with Federal agent Waltz who had followed in another car, and was waiting outside. At 6:30 P.M. Arpaio and Sanborn returned to defendant's apartment, and defendant handed Arpaio a white envelope and said, "Here's the stuff."

Arpaio and Sanborn then left and met Waltz, and together Arpaio and Waltz conducted a field test on the powder in the envelope, and the test produced a positive reaction indicating the presence of an opium derivative. On December 8, 1958, defendant sold Arpaio a half ounce of "stuff" which turned out to be a non-narcotic substance known as "dormin," which reacts to a field test in a manner similar to opium derivatives, but with a difference in reactions which agent Waltz indicated was distinguishable to him. On December 15, 1958, Arpaio again went to defendant's apartment accompanied by narcotic agent Irvin and purchased three $5 envelopes of a white substance, and placed defendant under arrest.

Defendant was then taken to the agents' car where he was interrogated. Agent Arpaio testified he asked defendant if defendant "sold to me on December 1" and defendant said "yes"; that the witness then asked defendant "who

his source of supply was", and "he stated it was a man on a corner. He didn't know his name." Agent Waltz testified that Arpaio asked defendant whether defendant had sold narcotics to Arpaio before and that defendant said "Yes, I have," and, when asked who his source of supply was, said "he bought the narcotics from an unknown man on the street corner."

Defendant admits that he sold all of the "stuff" to agent Arpaio as heroin and received the going price therefore. However, he claims all of the substance sold on December 1st, 8th and 15th was actually dormin, a non-narcotic, which he purchased in a drug store, and which admittedly was the subject of the December 8th transaction. We are concerned however only with the sale of December 1st, and the question which is determinative of the case is as to whether the proof sufficiently establishes the substance sold on that date to have been a narcotic drug. A stipulation that a government chemist would, if permitted, testify to an analysis of a powder containing heroin was entered into, with the defendant objecting to the admissibility of the stipulated testimony because of the lack of adequate identification of the substance analyzed as the substance sold on December 1st. The foundation was clearly insufficient, the objection well taken and the stipulation cannot be considered. However, in the view we take of the case, the ruling on the stipulation is not reversible error. *People* v. *Clark*, 7 Ill.2d 163.

We have repeatedly held that the prosecution must establish all essential elements of the crime beyond a reasonable doubt, which here includes, as part of the *corpus delicti*, proof that the substance sold by defendant was actually heroin. (*People* v. *Sanford*, 24 Ill.2d 365.) To meet this burden the competent evidence consists of the December 1st request of Arpaio to defendant to get him a half ounce of "stuff", meaning heroin, the admitted reply of defendant that "he would try," the undisputed payment of $80, the agreed

price, by Arpaio to defendant, the delivery by defendant to the agent of a half ounce of whitish powder represented to be heroin, the testimony regarding the field test which agent Waltz testified indicated the presence of an opium derivative and which agent Arpaio stated showed a positive reaction which might be heroin, and the testimony of the agents that defendant admitted selling narcotics to Arpaio on December 1st.

*People* v. *Sanford*, 24 Ill.2d 365, cited by defendant as authority for reversal for failure to prove the substance sold to be narcotics is readily distinguishable from the facts at bar. In *Sanford* there was a chemical analysis admitted into evidence affirmatively establishing the fact that the nature of the substance sold was unknown. Here the only testimony disputing the People's proof is the statement of defendant, an admitted addict, that he sold only dormin. The fact that the substance transferred on December 8th was subsequently determined to be dormin is of little or no probative value with reference to the December 1st sale.

We therefore conclude that the proof was sufficient to establish the identity of the subject matter of the December 1st sale to be narcotic drugs. The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCHAEFER dissenting:

In my opinion the judgment should be reversed because the People failed to prove that the substance sold by the defendant to agent Arpaio was heroin.

There was no evidence of any analysis of the white powder by a qualified chemist. The "field test" relied upon in the opinion indicated no more than that the substance tested may have been heroin; it did not prove that it was. This is clear from the testimony of the agents themselves. Agent Arpaio testified: "A field test consists of Marquis reagent in which, when you apply a substance believed to

be heroin, it would turn a purplish color. If it does so, it shows a positive reaction and *it may be heroin.* That is the result I got here. I have heard of an ingredient known as dormin. Recently it has been proved that it can react in that manner." (Italics supplied.) Agent Waltz testified: "The field test consists of a vial which contains hydrochloric acid and formaldehyde. When an opium derivative is placed into this solution, it turns red and then a dark purple. *This does not prove, but indicates* the presence of an opium derivative. I believe there are some other substances which would react in a similar way. I am familiar with the product known as 'dormin'. It would react in a similar way, but not the same way. It would turn to that color, but in a different degree." (Italics supplied.)

The defendant has thus been found guilty of the sale of heroin upon testimony which, at the very most, established that what he sold might have been heroin.

HERSHEY and KLINGBIEL, JJ., join in this dissent.