THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE BUDINGER, Defendant-Appellant.

First District (1st Division)   No. 1—90—1318

Opinion filed May 18, 1992.

George P. Lynch, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Mary Brigid Kenney, and Theresa Harney, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Defendant George Budinger was charged by information with three counts of delivery of a controlled substance and one count of possession with intent to deliver. (See Ill. Rev. Stat. 1987, ch. 56½, par. 1401.) After a jury trial, defendant was found guilty of these charges and sentenced to one term of six years' imprisonment and two concurrent terms of four years' imprisonment. Defendant seeks review of these convictions and sentences alleging that: (1) the circuit court erred in denying his motion to specifically enforce a plea agreement or, alternatively, to dismiss the informations against him because of prosecutorial misconduct and the State's failure to honor a plea agreement; (2) the State failed to prove beyond a reasonable doubt that the substances he allegedly delivered were in fact cocaine; and (3) prosecutorial statements during closing argument denied him a fair trial. We affirm.

Prior to trial, defendant filed a two-part motion "to dismiss the informations or in the alternative to specifically enforce the plea agreement." In part one of the motion, defendant sought dismissal of the informations against him on the ground that the State improperly seized a nontestifying defense expert's work product in violation of defendant's constitutional rights. In part two, defendant sought dismissal of the informations or specific enforcement of a plea agreement on the ground that, in violation of his Federal guarantees of "life, liberty and due process," the State failed to cooperate with defendant under the alleged agreement.

Defendant's motion came to hearing. Regarding the plea agreement, the State acknowledged a plea agreement, but contended it was not enforceable because defendant did not plead guilty to any of the informations against him. The court agreed with the State, refused to hold an evidentiary hearing on the matter and denied defendant's motion. Defendant submitted his motion as an offer of proof of what he believed the evidence would show. The motion provided as follows.

In 1989, defendant, an assistant State's Attorney and Agent Douglas Mugford entered a plea agreement. Under the terms of the agreement, defendant was to fully cooperate with Agent Mugford and the Metropolitan Enforcement Group in the investigation and interdiction of narcotics transactions. The agreement contemplated that defendant's assistance would culminate in three, 100-gram purchases of controlled substances. In exchange for defendant's cooperation, defendant would plead guilty to the informations, and the prosecution

would reduce defendant's Class X felony and make certain recommendations regarding defendant's sentencing. Defendant was advised on the danger of his cooperation but would be afforded protection where possible.

Defendant thereafter attempted to fulfill his obligations under the agreement, but the State failed to take meaningful efforts to cooperate with defendant. On at least 27 occasions, defendant unsuccessfully attempted to arrange narcotics transactions with various law enforcement agents. On most of the occasions, the agents were unavailable or failed to follow through with defendant's lead. On one occasion, the agents were watching Monday Night Football.

As a result of a drug transaction with an undercover agent, the other party to the transaction learned that defendant was cooperating with the police. This person thereafter committed an assault and battery upon defendant, burglarized his home and subjected defendant to numerous death threats.

Regarding defendant's alleged claim that the State improperly seized his expert's work product, the court agreed to conduct an evidentiary hearing. Assistant State's Attorney Michael Vittori testified that he requested Agent Mugford to transport the alleged narcotics to the laboratory of defendant's expert, Professor Robert Moriarty of the University of Illinois. Vittori requested that Mugford observe all procedures of the test to preserve the chain of custody. Vittori could not recall whether he told Mugford to take or obtain copies of the test results. Vittori added that he never filed Mugford's affidavit with the court as it had previously ordered because he believed Mugford's in-court testimony would better serve the court. Vittori did return the copies taken from Moriarty to defendant.

Professor Moriarty testified that defendant hired him to perform tests on the alleged controlled substances. Moriarty completed the requested tests, and Mugford requested copies of the results. Moriarty unsuccessfully attempted to call defense counsel to authorize the giving of copies to Mugford. Moriarty then turned a copy over to Mugford when Moriarty learned from Mugford that the State's Attorney had ordered Mugford to obtain a copy. Moriarty stated on cross-examination that Mugford was cordial the entire time and never interfered with the testing procedures.

Officer Mugford testified that Vittori requested him to transport the alleged narcotics to Moriarty and observe the testing procedure to preserve the chain of custody. Upon completion of the tests, Mugford was to obtain copies of the results. Mugford stated that he and the assistant State's Attorney looked at the work papers but they could

not understand them. No copies were made and no other person saw the reports.

Upon completion of the hearing, the court denied defendant's motion to dismiss the indictment. The court agreed with defendant's assertion that the State was not entitled to a copy of Moriarty's work until the defense had listed Moriarty as a witness. Nevertheless, the court believed that the State's action resulted in no prejudice to defendant. Accordingly, defendant's motion was denied.

Defendant's jury trial commenced on March 28, 1990. The evidence produced at trial relevant to this appeal pertains to defendant's alleged sale of cocaine to undercover officers on December 1, 1987, January 21 and January 26, 1988. The undisputed facts established that each of the substances tested positive to a cobalt dicyanide field test. A similar positive result was reached for a substance found on defendant's person upon his arrest. Chain of custody for all four substances was established.

To establish that the substances sold were indeed cocaine, the State introduced the expert testimony of three chemists employed with the Illinois State Police Lab in Maywood, Illinois.

Deborah Magolin testified regarding the substance transferred in the January 22, 1988, transaction and the substance found on defendant's person. Respectively, they weighed 30.8 and 1.78 grams.

Magolin performed three generally accepted tests on the substances: a cobalt dicyanide test, a thin layer chromatography test, and an infrared spectrophotometer test. In the first test, a quantity of the alleged cocaine is mixed with a chemical reagent. If the alleged substance is cocaine, an identifiable color is produced. A positive result, however, does not confirm the presence of cocaine. In this case, the substances tested positive for the presence of cocaine.

Magolin then performed a thin layer chromatography test. This is also a preliminary test which measures the alleged substance against a known standard of cocaine. If the alleged substance reacts similarly to the known standard, a positive test result is produced. In this case, the alleged substances tested positive for cocaine.

Magolin finally performed the infrared spectrophotometer test. This is a confirmatory test which utilizes an infrared spectrophotometer to measure the amount of infrared radiation absorbed or transmitted through a sample substance. The product of this test is a unique absorption pattern or spectrum based on the molecular structure of the sample tested. The pattern is then compared to the pattern of a known standard. If the two patterns match, then the two compounds

are the same. In this case, the pattern of the substances matched the pattern produced by a known standard of cocaine.

Based upon the results of the above three tests, Magolin opined that the substance seized from defendant's person and the substance transacted on January 22, 1988, were in fact cocaine.

On cross-examination, Magolin testified that the standard against which she measured the substances in question was a known standard of cocaine. She explained that she knew the standard to be cocaine because when a standard is received into the laboratory, it is tested to insure "what's on the bottle is in fact what is inside the bottle." While she could not recall whether she tested the standard in this case, she stated that one of the chemists in the laboratory tested the standard.

Nancy Hall testified regarding the substance transferred on January 21, 1988. She determined it to weigh 3.3 grams. Hall then performed the same three tests which Magolin performed. A known standard of cocaine was used. Based on the results of these three tests, Hall opined that the substance was in fact cocaine.

Hall testified on cross-examination regarding the infrared spectrophotometer test. She stated that the spectrum from the unknown sample is compared to a hard copy of a graph of a known standard. She explained that the standard is not tested each time a sample is run in the spectrophometer. Hall did not test the standard she used in this case.

Albert Carl Larsen testified regarding the December 30, 1987, transaction. The substance transferred on that date weighed 3.6 grams. Like Magolin and Hall, Larsen performed the same three tests. Based on the results of the three tests, Larsen opined that the substance transferred on December 30, 1987, to be cocaine.

During his testimony, Larsen opined that the standard he used was in fact cocaine. He explained that when the laboratory purchases standards from pharmaceutical companies or chemical supply houses, the substance in the vial is tested to assure that it is the same as what the label on the vial purports it to be. For example, the standard would be tested by the infrared spectrophotometer. The spectrum produced would be compared to the previous standard's spectrum. If they match, the new standard is determined to be cocaine.

Larsen testified on cross-examination that he may not have tested the standard he used in this case or the previous standard. However, Larsen stated that the member of the laboratory who opens the new vial confirms the standard. At the time of the testing, four people worked in the laboratory.

At the close of the evidence, defendant was found guilty on three counts of delivery of a controlled substance and one count of possession of a controlled substance with intent to deliver. At sentencing, the intent to deliver charge was merged into one of the possession charges. The court then sentenced defendant to one six-year term of imprisonment and two concurrent four-year terms. This appeal followed.

Defendant's first contention on appeal is that the circuit court erred when it failed to enforce the plea agreement between defendant and the Du Page County State's Attorney's office. Relying on *People v. Navarroli* (1988), 121 Ill. 2d 516, 521 N.E.2d 891, the State responds that even if the allegations within defendant's motion are true, the court's actions were proper. For the following reasons, we find *Navarroli* dispositive.

In *Navarroli*, defendant was charged in an indictment with cocaine-related offenses, and he later moved to compel the State to comply with a claimed plea agreement. Defendant alleged that under the agreement, he acted as an informant in various drug investigations in exchange for the State's promise to reduce the charges against him. Defendant alleged that after he assisted law enforcement officials, the State's Attorney refused to reduce the charges against him. In response, the State denied the existence of the agreement and the claimed terms.

At the hearing to enforce the plea agreement, the circuit court found the existence of an agreement and that defendant had fully performed. Accordingly, the court ordered specific performance. On appeal, the appellate court reversed, and the supreme court affirmed this reversal, holding that, even if the circuit court's findings were accepted as true, the prosecution's refusal to carry out the claimed bargain did not deprive defendant of due process.

In its analysis, the *Navarroli* court reviewed *Santobello v. New York* (1971), 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495, and *Mabry v. Johnson* (1984), 467 U.S. 504, 81 L. Ed. 2d 437, 104 S. Ct. 2543. In *Santobello*, the Court held that a defendant who enters a guilty plea in reliance upon a plea agreement is entitled to a remedy when the prosecutor breaches that promise. In *Mabry*, however, the Court determined that the same constitutional concerns are not implicated when the prosecutor takes a course of action inconsistent with an alleged plea agreement before the defendant enters a guilty plea. *Navarroli* found persuasive the following quote from *Mabry* which defined, under due process principles, the scope of constitutional protection afforded a defendant who enters a plea agreement:

" '[A] plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. *It is the ensuing guilty plea that implicates the Constitution.* Only after respondent pleaded guilty was he convicted, and it is that conviction which gave rise to the deprivation of respondent's liberty at issue here.' " (Emphasis in original.) *Navarroli*, 121 Ill. 2d at 523, 521 N.E.2d at 893, quoting *Mabry*, 467 U.S. at 507-08, 81 L. Ed. 2d at 442, 104 S. Ct. at 2546.

*Navarroli* noted that, under Supreme Court precedent, due process principles govern the enforceability of plea agreements. Accordingly, the key issue is whether the State's repudiation of a plea agreement constitutes a denial of due process which can only be remedied by enforcement of the agreement. (*Navarroli*, 121 Ill. 2d at 523-24, 521 N.E.2d at 894.) Where no plea of guilty has been entered, no due process violation occurs, as a defendant is not denied any liberty by virtue of the State not abiding by the terms of the agreement. A defendant "still has the opportunity of pleading not guilty and proceeding to trial." *Navarroli*, 121 Ill. 2d at 524, 521 N.E.2d at 894.

■ In this case, as in *Navarroli*, defendant claims to have cooperated with State drug enforcement agents pursuant to the terms of a plea agreement. Although defendant cannot be returned to his pre-plea agreement position in that his time, energy and cooperation cannot be restored, defendant is not entitled to specific performance as he did not enter a guilty plea. (*Navarroli*, 121 Ill. 2d at 527-29, 521 N.E.2d at 895.) In the absence of a guilty plea, or a defendant's surrendering of a constitutional right in reliance on the plea agreement, specific performance is not available. (Compare *People v. Starks* (1985), 106 Ill. 2d 441, 478 N.E.2d 350; *People v. Raymond* (1990), 202 Ill. App. 3d 704, 560 N.E.2d 26; *People v. Schmitt* (1988), 173 Ill. App. 3d 66, 527 N.E.2d 384, *rev'd on other grounds* (1989), 131 Ill. 2d 128, 545 N.E.2d 665 (privilege against self incrimination surrendered); *People v. Umfleet* (1989), 190 Ill. App. 3d 804, 546 N.E.2d 1013 (defendant entered guilty plea in reliance on State's promises), with *Navarroli*, 121 Ill. 2d 516, 521 N.E.2d 891; *People v. Boyt* (1985), 109 Ill. 2d 403, 488 N.E.2d 264, *cert. denied* (1986), 476 U.S. 1143, 90 L. Ed. 2d 699, 106 S. Ct. 2254 (defendant entered no plea agreement nor surrendered any constitutional right in reliance on State's promises).) Here, defendant entered no guilty plea, and the allegations of his motion, even if taken as true, reveal that no constitutional rights were surrendered in reliance on the plea agreement. For the forego-

ing reasons, we affirm the court's denial of defendant's motion for specific enforcement based on the State's failure to abide by a plea agreement.

Defendant additionally contends that the circuit court erred when it failed to dismiss the informations because of the State's alleged seizure of Professor Moriarty's work product. We disagree.

■ Defendant in his brief argues that the circuit court erred in denying his motion to dismiss because it failed to recognize its inherent authority to dismiss an indictment where there is a clear denial of due process. We find this argument unpersuasive. On the one hand, defendant is correct insofar as he states that a court has inherent authority, in addition to its statutory authority (see Ill. Rev. Stat. 1987, ch. 38, par. 114—1), to dismiss an information where a clear denial of due process is shown. (*In re J.H.* (1987), 164 Ill. App. 3d 718, 724, 518 N.E.2d 249, 254, *aff'd* (1990), 136 Ill. 2d 1, 554 N.E.2d 961; *People v. Williams* (1985), 137 Ill. App. 3d 736, 740, 484 N.E.2d 1191, 1195.) However, defendant's argument fails because the court apparently recognized its inherent authority as it would not have otherwise held an evidentiary hearing regarding what happened to Moriarty's notes. The court's holding of a hearing and its ruling make clear that the court was not rejecting defendant's motion on a technical, lack of authority ground. Rather, the court concluded that the whole incident involving Moriarty's notes resulted from a misunderstanding and, further, defendant was not prejudiced by the incident. Accordingly, under the evidence, the court concluded that defendant was not denied due process of law. Our review of the evidence presented during the hearing does not compel a different conclusion.

Defendant's second contention on appeal is that the State failed to prove beyond a reasonable doubt that the substances defendant delivered and possessed were in fact cocaine. Defendant argues that all experts relied on tests which required comparing the results of such tests with the result produced by a known standard of cocaine. Defendant claims that because the State failed to prove beyond a reasonable doubt that the known standard was cocaine, the State correspondingly failed to prove that the substances in question were in fact cocaine. We disagree and find that the evidence established the substances in question to be cocaine beyond a reasonable doubt.

In a criminal case, the burden of proof rests upon the State. The State must establish, beyond a reasonable doubt, not only the defendant's guilt, but also the essential elements of the crime. (*People v. Brannon* (1978), 59 Ill. App. 3d 531, 532, 375 N.E.2d 840, 842.) Thus, in a prosecution for unlawful delivery of a controlled substance, the

prosecution must establish beyond a reasonable doubt that the substance delivered was in fact a controlled substance. *Brannon*, 59 Ill. App. 3d at 532, 375 N.E.2d at 842.

Contrary to defendant's assertion, the absence of direct proof that the standard used in this case was in fact cocaine did not require the entry of a directed verdict in his favor, where other circumstantial evidence proved the existence of the illegal controlled substance beyond a reasonable doubt. In *People v. Robinson* (1958), 14 Ill. 2d 325, 153 N.E.2d 65, defendant was charged with the unlawful sale of opium, a narcotic, and alleged on appeal that the State failed to prove beyond a reasonable doubt that the powder transferred was a narcotic. The following passage is relevant to this appeal:

> "Thus the only issue raised by defendant's assignment of error is whether the proof establishes the powder referred to by the witnesses was heroin. While the evidence relating to the nature and identity of the powder obtained from the defendant is in part circumstantial, this jurisdiction has long been committed to the principle that a conviction may be based on circumstantial evidence, and it has been broadly stated in many cases that there is no legal distinction between direct and circumstantial evidence as to the weight and effect thereof. [Citations.] ***
>
> Circumstantial evidence is indirect proof of the principal facts of a case, which principal facts can only be inferred from one or more circumstances directly established. In this instant case it was directly established that three persons, all acquainted with the preparation and use of narcotic drugs, saw defendant process a white powder using methods and paraphernalia commonly used in the preparation of narcotic drugs for sale. Additionally the record establishes that all three occurrence witnesses thought they were receiving heroin from defendant and each used procedures and paraphernalia commonly used to introduce narcotic drugs into the body. Apart from these aspects which tend to show indirectly that the powder was heroin, there is direct evidence which supports the jury's conclusion. McKenzie testified that he got the distinctive bitter taste of heroin when he inhaled the powder, and all three of the principal witnesses related that their physical reactions from the use of the powder obtained from defendant were the same as the reactions which had followed their previous use of heroin. That the reactions described were narcotic reactions was verified by the prosecution's expert who also testified that an addict would come to know a narcotic by its reaction. *** From a consider-

ation of all the evidence, direct and circumstantial, it is our opinion that both the jury and the court were justified in finding that the powder in question was a narcotic drug as charged in the indictments." *Robinson*, 14 Ill. 2d at 330-32, 153 N.E.2d at 68-69.

*Robinson* is significant because the existence of the narcotic was established almost solely from the testimony of admitted narcotics users who purchased and subsequently used the substance defendant had sold them. Further, the State proffered no expert testimony to the effect that the substances defendant sold matched a known standard in laboratory tests.

Consistent with *Robinson* is *People v. Harrison* (1962), 26 Ill. 2d 377, 186 N.E.2d 657, *cert. denied* (1963), 373 U.S. 928, 10 L. Ed. 2d 426, 83 S. Ct. 1531. In *Harrison*, the defendant similarly contended that the State failed to prove beyond a reasonable doubt that he sold a narcotic drug. The following evidence was found by the court to have sufficiently established the existence of a narcotic:

"[T]he competent evidence consists of the December 1st request of [Federal agent] Arpaio to defendant to get him a half ounce of 'stuff', meaning heroin, the admitted reply of defendant that 'he would try,' the undisputed payment of $80, the agreed price by Arpaio to defendant, the delivery by defendant to the agent of a half ounce of whitish powder represented to be heroin, the testimony regarding the field test which agent Waltz testified indicated the presence of an opium derivative and which agent Arpaio stated showed a positive reaction which might be heroin, and the testimony of the agents that defendant admitted selling narcotics to Arpaio on December 1st." *Harrison*, 26 Ill. 2d at 379-80, 186 N.E.2d at 658.

As *Robinson* and *Harrison* indicate, the existence of the narcotic which forms the basis of an illegal drug charge may be proven by circumstantial evidence. Where such proof is beyond a reasonable doubt, defendant's conviction will be affirmed. See also *People v. Schlig* (1983), 120 Ill. App. 3d 561, 458 N.E.2d 544; *In re T.D.* (1983), 115 Ill. App. 3d 872, 450 N.E.2d 455; *People v. Vance* (1979), 74 Ill. App. 3d 446, 393 N.E.2d 91; *Brannon*, 59 Ill. App. 3d 531, 375 N.E.2d 840; *People v. Bertram* (1977), 45 Ill. App. 3d 70, 358 N.E.2d 1357.

■ After reviewing all the evidence in this case on the issue of whether the substance defendant transacted was in fact cocaine, we believe the State's evidence proved defendant's guilt beyond a reasonable doubt. On three different occasions, defendant held out a white powdery substance to be cocaine and in fact sold it as such. After

each sale, a field test was administered yielding a positive result. In the laboratory, three experts performed three tests. All tests indicated that the substances tested were cocaine. Two of the tests utilized standards, and the experts testified the standard was a known standard of cocaine. While no expert testified that, in fact, the standard was cocaine, this deficiency in the State's case did not create a reasonable doubt of guilt.

In *Brannon* (59 Ill. App. 3d 531, 375 N.E.2d 840), the court was faced with record evidence substantially similar to the evidence now before this court. There, the alleged controlled substance was "LSD." The State introduced the testimony of an expert who performed a color test and a thin layer chromatography test. The only testimony to show that the standard employed in the latter test was indeed LSD was the expert's testimony that his supervisor obtained the standard from the Federal government. The expert testified that he did not test the standard, nor did he testify that other chemists within the lab tested it upon its receipt. Despite the deficiency of proof regarding the true nature of the standard, the court affirmed the conviction. Significant is the following passage:

"It is clear that the identity of the illegal substance may be proved by circumstantial evidence. [Citations.] Here, the chemist performed three thin layer chromatography tests. In each test the substance sold as LSD and the standard reacted to the solvent in a positive manner indicating that the substance sold as LSD and the standard were the same substance. It would seem beyond chance that the standard was not LSD when the substance represented by the defendant as LSD reacted in the same manner in three separate tests with the standard. The two substances were the same in the opinion of the expert. If not LSD, then what? It would be an extraordinary coincidence that by chance some other identical chemical compound composed the substance sold by the defendant as LSD and the standard furnished by the Federal government as LSD. Certainly the improbability of such an extraordinary circumstance would warrant the jury concluding beyond a reasonable doubt that the substance was LSD." *Brannon*, 59 Ill. App. 3d at 534-35, 375 N.E.2d at 842-43.

Similarly, in this case, the deficiency in the State's proof regarding its experts did not create a reasonable doubt as to defendant's guilt. The circumstances of the sale, the field tests, and the laboratory tests sufficiently established defendant's guilt. As noted by *Brannon*, the remote chance that the standard employed in this case was some-

thing other than cocaine would be an "extraordinary circumstance" indeed. Accordingly, for these foregoing reasons, we find that the State proved defendant guilty beyond a reasonable doubt.

Defendant's final contention on appeal relates to prosecutorial statements made during closing argument which defendant claims denied him a fair trial. We find that defendant has failed to preserve this issue for review.

During closing argument, the prosecutor commented on the drug trade's violent consequences on society and that defendant was part of this drug trade. The second comment concerned defendant's attempt to set forth an entrapment defense and the State's response that defendant was predisposed to commit the crime.

Regarding the first comment, while defendant objected at trial, defendant failed to include the comment in his motion for a new trial. This contention is therefore waived. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) Regarding the second comment, defendant neither objected nor included the matter in his post-trial motion. Again, defendant has waived review of the matter.

The plain error exception to the waiver rule does not require that we reach the merits of defendant's argument. This was not a closely balanced case and the comments in question are not so severe as to have denied defendant a fair trial. Accordingly, we hold that defendant has failed to preserve for review any issue regarding prosecutorial comment.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

O'CONNOR and MANNING, JJ., concur.