No. 2-13-0568
Opinion filed March 24, 2015

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 01-CF-1864 |
| MICHAEL ALFONSO, | ) ) | Honorable Kathryn E. Creswell, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SPENCE delivered the judgment of the court, with opinion.
Justices Hutchinson and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Michael Alfonso, appeals the trial court's orders striking petitions that he filed pursuant to the Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1 *et seq.* (West 2012)) and section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)), and the trial court's order denying his motion to reconsider.  The trial court struck the petitions on the basis that they violated defendant's promise, as part of his plea agreement, not to collaterally attack his convictions.  Defendant argues that the trial court's actions were procedurally impermissible; that he was not properly admonished that he was waiving his right to file collateral petitions; and that, if he did violate the plea agreement, the State had to either seek to vacate the plea agreement or allow his petitions to proceed.  We reverse and remand.

¶ 2                                    I. BACKGROUND

¶ 3     On July 3, 2001, defendant was charged with the first-degree murder (720 ILCS 5/9-1(a) (West 2000)) and aggravated stalking (725 ILCS 5/12-7.4(a)(1) (West 2000)) of Geneva Velasquez. Defendant was not apprehended and brought back to Illinois until 2005, after which the State charged him by superseding indictment with multiple counts of first-degree murder and with aggravated stalking.

¶ 4     On August 23, 2005, defendant's attorneys filed a motion for the appointment of a clinical psychologist to examine his fitness to stand trial. They alleged that due to defendant's mental state they were unable to communicate effectively with him. On November 4, 2005, following a fitness hearing, the trial court found defendant fit to stand trial.

¶ 5     The same day, the State filed a notice of its intent to seek the imposition of the death penalty. Among other aggravating factors, the State alleged that defendant had also killed Sumnear Yang on September 1, 1992.

¶ 6     On June 29, 2007, the State and the defense indicated that they were close to a plea deal. As part of the agreement, defendant was placed under oath and was examined in open court by the State's Attorney. Defendant admitted to killing Yang and Velasquez. He admitted that the only reason that he would agree to natural life imprisonment was to avoid the possibility of the death penalty. He also admitted faking a mental illness in 1994 and again in this case. He agreed that, for purposes of entering a guilty plea, he would waive any right to appeal and to raise any issue in postconviction litigation in either state or federal court. He agreed that he would "waive any and all issues that [he] could ever have brought up throughout the rest of [his] life" and that, if he ever tried to escape and "broke the agreement," the State could seek the death penalty against him.

¶ 7    The parties formally entered into the plea agreement on July 11, 2007. As to Velasquez, defendant pleaded guilty to first-degree murder and aggravated stalking, in return for natural life imprisonment for the former charge and a consecutive sentence of five years' imprisonment for the latter charge. As to Yang, defendant pleaded guilty to first-degree murder, intentional homicide of an unborn child, concealment of a homicidal death, and kidnapping. In return, he was to receive two natural life sentences concurrent with the natural life sentence relating to Valasquez's case, and also five- and seven-year consecutive sentences that would be concurrent with each other.

¶ 8    The trial court asked defense counsel if he had: the opportunity to go through all of the discovery; discussed with defendant a defense strategy, potential witnesses, and other evidence that could be presented at trial and at the sentencing phase; and explained all of the options to defendant, including the procedures and the burden of proof for a death penalty case. Defense counsel responded in the affirmative. He stated that he was not initially able to communicate with defendant effectively but had been able to do so for the previous 1½ years. In response to further questioning by the trial court, defense counsel stated that he did not have any doubts regarding defendant's current mental state and believed that defendant fully understood the nature of the plea agreement. When defendant was asked if he agreed with all of defense counsel's answers to the aforementioned questions, defendant responded in the affirmative.

¶ 9    The State's Attorney stated that, as part of the plea agreement, defendant was waiving any appeals and all collateral attacks in state and federal court. The State's Attorney stated that defendant also agreed that, if he attempted to escape and that fact were proven beyond a reasonable doubt, the plea agreement would be vacated and defendant would again face the death penalty. Finally, a portion of defendant's retirement funds would go to Yang's family for her

burial costs, and the remainder would be turned over to the County of Du Page for reimbursement.

¶ 10 The trial court then proceeded to admonish defendant. Defendant agreed that the State's Attorney's recitation of the plea agreement was also his understanding of the agreement. The trial court inquired into defendant's medication, mental state, and satisfaction with counsel. He stated that he was able to understand the proceedings, fully discussed the case with his counsel, and was satisfied with the representation that he had received. The trial court admonished defendant of the charges, the sentencing ranges, and his right to a jury trial. Defendant waived his right to a jury trial and pleaded guilty to the charges.

¶ 11 The State presented a factual basis, to which defendant stipulated. The trial court again admonished defendant as to the agreed-upon sentences. The following exchange then occurred:

"THE COURT: Mr. Alfonso, as part of the plea agreement, you are giving up your right to later ask to withdraw your guilty plea, and you are giving up your right to appeal and *you are giving up any right to attack these judgments at a later date*.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: If you appeal or file a motion to withdraw your plea *or to attack the judgments*, *you will violate your promise not to do so and that will violate the plea agreement*.

Do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: The plea agreement is in essence a contract that you and the State are entering into, and the agreement will be enforced on both sides.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Generally even though you agree to a sentence, you have a right to appeal.  If you decide to do that, you have to first file a motion in writing in the trial court within 30 days of when the sentence is imposed.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: In that motion, generally if one such motion is filed, you have to ask the Court to vacate the judgment and to allow you to withdraw your guilty plea and you have to set forth the grounds for your motion.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If that motion is granted, then the plea of guilty, the sentence and the judgment would be vacated, and the case would be set for trial along with all of the charges that are dismissed as part of the plea agreement.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: If you were indigent, a copy of the transcript of the plea and the sentence would be provided to you for free, and an attorney would be appointed to represent you free of charge.  Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Any issue or claim of error not raised in the motion is waived.  Do you understand that?

THE DEFENDANT: Yes.

THE COURT: By entering into this agreement today, you are giving up your right to appeal in each one of these cases. Do you understand?

THE DEFENDANT: Yes, I do.

THE COURT: *You are also giving up any rights in the future to initiate any proceedings which attack the judgments for any reason whatsoever.*

THE DEFENDANT: Yes.

THE COURT: Do you understand?

THE DEFENDANT: Yes, I do." (Emphases added.)

¶ 12 The trial court found that defendant's pleas were voluntary; that he understood the nature of the charges and the possible penalties that could be imposed; that he knowingly, intelligently, and voluntarily waived his right to a jury trial; and that there was a sufficient factual basis for the pleas. It further found that defendant knowingly, intelligently, and voluntarily waived his right to appeal and to collaterally attack the judgments.

¶ 13 Over five years later, on March 7, 2013, defendant filed a petition for relief from judgment under section 2-1401 and a postconviction petition. In his section 2-1401 petition, defendant argued that his natural life sentence for Velasquez's death was void because it was beyond the statutory maximum of 60 years' imprisonment and because the State did not follow statutory procedures to obtain an extended-term sentence. He also argued that his conviction of aggravated stalking was improper because his crime did not satisfy the statutory prerequisites and his conviction violated one-act, one-crime principles.

¶ 14 In his postconviction petition, defendant argued that his counsel was ineffective for failing to pursue a defense of mental illness, given that defendant had been diagnosed as

mentally ill prior to the crimes, and for coercing defendant to plead guilty by assisting the State's Attorney in threatening him with the death penalty, even though there was a death penalty moratorium at that time.

¶ 15    On March 20, 2013, the trial court held a hearing on the pleadings. The State stated that it did not have a position on the postconviction petition, because 90 days had not yet passed since its filing. It stated that it "would be happy to file a response" to the section 2-1401 petition. The trial court asked the State if it had a response to file that day, and the State replied that it did not but that it had ordered a transcript of the plea agreement hearing. The trial court stated that both of defendants' pleadings violated the plea agreement, and it struck them. The trial court stated that the State could file a copy of the transcript, which the State did on April 3, 2013. Also on April 3, the trial court stated that the State was filing the transcript as an exhibit in support of striking the pleadings and that the transcript showed that defendant had agreed as part of his plea agreement that he would not file an appeal or any collateral actions.

¶ 16    Defendant filed a motion to reconsider on April 17, 2013. The trial court struck the motion on May 9, 2013, finding that it also violated the plea agreement. Defendant timely appealed.

¶ 17                                II. ANALYSIS

¶ 18    Defendant first argues that the trial court prematurely struck his section 2-1401 petition less than 30 days after the State had been served with the petition and before the State had filed a response. Therefore, according to defendant, the cause should be remanded for further proceedings under *People v. Laugharn*, 233 Ill. 2d 318, 323 (2009). Defendant admits that his service of the petition on the State was not in the manner prescribed by Illinois Supreme Court

Rule 105(b) (eff. Jan. 1, 1989) in that it was served by regular mail, but he argues that he is entitled to a remand for further proceedings under the majority of decisions addressing the issue.

¶ 19    Defendant argues that the trial court's striking of his postconviction petition was also improper.  He notes that under the Postconviction Act the trial court may *dismiss* a petition during first-stage review if the petition is frivolous or patently without merit.  725 ILCS 5/122-2.1(a)(2) (West 2012).  Defendant argues that, therefore, the trial court was not authorized to *strike* his petition.  He cites *People v. Boclair*, 202 Ill. 2d 89 (2002).  There, our supreme court held that a trial court may not summarily dismiss a postconviction petition as untimely during the first stage of review.  *Id.* at 102.  It stated that, instead, the time limitations of the Postconviction Act should be considered as an affirmative defense that can be raised, waived, or forfeited by the State.  *Id.* at 101.  The court stated that, in particular, if an untimely petition showed that the defendant suffered a deprivation of constitutional magnitude, a dutiful prosecutor could choose to waive that procedural defect during the second stage of proceedings.  *Id.* at 101-02.

¶ 20    Defendant argues that the question of whether a postconviction petition violates a plea agreement is analogous to the issue of the petition's timeliness and should not be a ground for first-stage dismissal.  Defendant argues that a plea agreement is a contract between the parties (see *People v. Evans*, 174 Ill. 2d 320, 326 (1996)) and that the rights and duties created by the agreement are conferred upon the parties.  Defendant argues that, therefore, as is the case for the issue of timeliness, the right to decide whether to enforce or waive the plea agreement terms must rest with the State rather than the trial court.  Defendant maintains that this point is illustrated by *People v. Nichols*, 143 Ill. App. 3d 673, 675 (1986).  There, the State argued that the appeal was prohibited by the defendant's plea agreement but conceded that he was entitled to certain credit against his fines and that one of his convictions should be vacated under the one-

act, one-crime rule. *Id.* The appellate court dismissed the appeal but granted the defendant relief on the two conceded issues. *Id.* at 679. Defendant argues that, if petitions raising serious questions are summarily dismissed without even giving the State the opportunity to raise its rights, a defendant could be left with no recourse to correct serious injustices.

¶ 21 Defendant further argues that both of his petitions should be remanded for further proceedings because the automatic striking of collateral petitions was not a term of the plea agreement and because he was not sufficiently admonished of his rights relating to collateral petitions. Defendant cites *People v. Fearing*, 110 Ill. App. 3d 643, 645 (1982), and *People v. Edgeston*, 396 Ill. App. 3d 514 (2009), which we review in some detail.

¶ 22 In *Fearing*, the defendant entered a plea agreement that included a promise not to appeal two convictions. *Fearing*, 110 Ill. App. 3d at 644. The defendant nonetheless filed an appeal, and the State moved to dismiss the appeal pursuant to the agreement. *Id.* The appellate court stated that, like other constitutional and statutory rights, the right to appeal could be waived, whether by neglect or conscious choice, such as part of a plea agreement. *Id.* It stated, "We are not faced with the question of enforcing a defendant's promise to forego a challenge to the guilty plea, as by a motion to withdraw it." *Id.* at 645. The court stated that by appealing defendant was attempting to unravel portions of the plea agreement and that dismissing the appeal would keep the total agreement intact. *Id.* The court stated that "unless the defendant can show that the agreement not to appeal was made involuntarily or unintelligently or suffers from some similar infirmity, it may be enforced." *Id.* The court next addressed the defendant's argument that he should have been admonished. It stated that, by insulating convictions from review, the agreement operated like a guilty plea. *Id.* at 646. The court concluded that the trial court fully explained to the defendant the appellate rights he had waived by the agreement. *Id.*

¶ 23    In *Edgeston*, we stated that *Fearing*'s reasoning also applied to a waiver of postconviction relief after the original trial proceedings had ended. *Edgeston*, 396 Ill. App. 3d at 522. We found that "postconviction-relief waivers in plea agreements will be upheld as long as they are knowing and voluntary." *Id.* However, we concluded that, as the record stood in *Edgeston*, the waiver was invalid because the defendant had alleged unreasonable assistance of postconviction counsel, which could have made his waiver of postconviction relief less than knowing or voluntary. *Id.* at 523. We stated that the waiver was also invalid for lack of consideration, because the consideration that the defendant received under the agreement was illusory. *Id.* at 523-24.

¶ 24    Defendant argues that, given *Fearing*'s requirement that a trial court fully admonish a defendant of the effect of waiving his appellate rights, and this court's holding in *Edgeston* that *Fearing*'s reasoning also applies to a waiver of collateral petitions, it necessarily follows that a trial court must admonish a defendant about a waiver of the right to file collateral petitions. Defendant argues that, although he was sufficiently admonished regarding his appeal rights, he was given no explanation of his rights pertaining to collateral petitions, beyond the basic statements that there were such things as collateral petitions and that he was giving up his right to file one. Defendant argues that his rights regarding such petitions were very different from his appeal rights and that, at a minimum, he should have been told that he had the right to file a collateral petition introducing new evidence challenging his convictions and that, if that petition were not summarily dismissed, he would be appointed counsel who would have the opportunity to investigate the new evidence and amend the petition. Defendant argues that he could not be said to have understood what he was giving up when he waived his right to file collateral petitions, so his waiver should not be enforced.

¶ 25    Defendant argues that, even if his waiver was enforceable, striking the petitions was the wrong way to enforce it.  Defendant argues that the State's Attorney stated on the record that, if defendant filed a collateral petition, the agreed sentences would be vacated and the State would be allowed to seek the death penalty.  Defendant recognizes that the death penalty has been abolished (725 ILCS 5/119-1(a) (West 2014)), so the State could not actually seek it.  However, he argues that the agreements' terms could still be honored because the State could vacate defendant's plea agreement and reinstitute proceedings against him.  In other words, defendant argues that, if his waiver was enforceable, the proper remedy would not be striking the petitions, but rather vacating his pleas.

¶ 26    The State responds that, because defendant bargained away his right to file collateral proceedings, the determinative issue on appeal is whether he knowingly and voluntarily waived that right.  The State maintains that, if we answer that question in the affirmative, the only option is to affirm the striking of defendant's collateral pleadings as violating his plea agreement, as in *Fearing*.  According to the State, any other disposition would undermine the plea agreement because it would entitle defendant to a decision on the merits of his pleadings.

¶ 27    The State argues that, prior to accepting defendant's guilty pleas, both it and the trial court admonished defendant that he would be giving up his right to attack his judgment later, for any reason, thereby giving defendant time to "digest the details" of the plea agreement.  The State argues that, on the day the trial court accepted defendant's guilty pleas, it meticulously admonished defendant that he had a right to attack the judgment at a later date; that he was giving up that right; and that filing any pleading would violate the agreement.  The State contends that defendant's model of the admonishments the trial court should have given creates an unworkable paradigm because it focuses solely on postconviction petitions, whereas collateral

petitions could also include section 2-1401 petitions and petitions for *habeas corpus* relief under both state and federal law. The State further argues that, unlike the rules governing direct appeals, the rules governing collateral proceedings are distinct for each proceeding; for example, only incarcerated defendants may file postconviction petitions. See 725 ILCS 5/122-1(a) (West 2014). The State maintains that requiring a trial court to admonish a defendant on all variations of collateral proceedings would create confusion, because not all collateral proceedings might pertain to that particular defendant. The State argues that, in contrast, the trial court properly admonished defendant on the basic purpose of a collateral proceeding—specifically, to attack a judgment at a later date for any reason—and that he was giving up this right. The State argues that this admonishment sufficiently informed defendant that he could not at a later date ask the court to review the judgment. The State notes that defendant was also represented by counsel during all stages of the proceeding, a factor taken into account in *Fearing* (see *Fearing*, 110 Ill. App. 3d at 646), and that counsel stated that he believed that defendant fully understood the plea agreement. The State reasons that, because defendant knowingly and voluntarily gave up his right to file collateral pleadings, the trial court, in accordance with the plea agreement, properly struck defendant's section 2-1401 petition and postconviction petition.

¶ 28   In response to defendant's argument that the trial court should have permitted the filing of the pleadings before dismissing them, the State argues that such a procedure would allow defendant to seek review of the merits of his pleadings on appeal, in direct contravention of the plea agreement.

¶ 29   As for defendant's position that the trial court could not strike his section 2-1401 petition before allowing the State 30 days to respond, the State argues that the cases cited by defendant are distinguishable because there the trial courts ruled on the merits of the petitions by

dismissing them, whereas here the trial court simply struck the petition as violating the plea agreement, without ruling on the merits. The State maintains that there was nothing defendant could amend in the petition that would permit the trial court to grant him relief pursuant to section 2-1401. The State argues that the record also shows that it received the section 2-1401 petition, was present in court at the hearing, and filed an exhibit (the transcript) in support of the trial court's striking of defendant's pleading. The State argues that, even if the 30-day period was not met, any error was harmless because the time is meant to permit the State to file a responsive pleading, and here the State indicated that it had the petition, could file a response, and ultimately did file an exhibit supporting striking the petition.

¶ 30    Last, the State argues that defendant's argument that the State must vacate the plea agreement because defendant violated it is without merit, because it is based on the faulty premise that only a defendant receives a benefit from plea bargaining, when in fact it is for the benefit of both parties. The State cites *People v. Donelson*, 2013 IL 113603, ¶ 19, where our supreme court stated:

> "Where a plea rests in any significant degree upon a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration for the plea, that feature of the agreement must be fulfilled. [Citation.] The principal inquiry, in that respect, is whether the defendant has received the benefit of his bargain. [Citation.] Though rarely emphasized in this court's jurisprudence, the other half of the contractual equation is the benefit of the bargain accruing to the State, a consideration that looms larger as the temporal gap between the commission of the offenses and attempts to withdraw the guilty plea widens."

The State argues that, therefore, where the State's decision to enter a plea agreement rested upon a defendant's promise, such as an agreement to waive collateral proceedings, then the defendant must also fulfill his promise "unless the State is willing to forego some of the benefits for which it had bargained." *People v. Douglas*, 2014 IL App (4th) 120617, ¶ 40. The State argues that it would be its decision to seek to vacate the pleas if it wanted to forgo the benefits for which it bargained, as it was defendant who did not fulfill his promise.

¶ 31    Relatedly, the State argues that specific performance of the plea agreement is not warranted. The State argues that the key issue in whether a defendant is entitled to specific performance of a plea agreement is whether a defendant suffers from "a denial of due process which can only be remedied by enforcement of the agreement." *People v. Budinger*, 230 Ill. App. 3d 279, 286 (1992). The State argues that defendant has not set forth how his own conduct violating the plea agreement constitutes a denial of his due process such that the State must vacate his plea agreement. The State maintains that, because defendant failed to fulfill his end of the bargain, it would be the State that would be permitted to ask for specific performance. The State argues that, if we were to find that a defendant's direct violation of a plea agreement automatically vacated the plea, we would create a loophole for defendants to withdraw their pleas without having to abide by Illinois Supreme Court Rule 604(d) (eff. Dec. 3, 2015).

¶ 32    Defendant responds that the trial court was required to explain the rights he was giving up, even if it was difficult to do so. Defendant argues that, moreover, there are only three collateral petitions recognized by Illinois statutes, those being postconviction petitions, section 2-1401 petitions, and *habeas corpus* petitions, and that the trial court could have briefly explained the nature of each of those. He further argues that, if he violated the waiver, the State's options

are to enforce the agreement and vacate the pleas or to forgo its benefit under the agreement and allow the petitions to proceed on their merits.

¶ 33    We note that defendant does not dispute that, through a plea agreement, a defendant may bargain away his right to appeal and his right to collateral proceedings. See *Edgeston*, 396 Ill. App. 3d at 522; see also *People v. McKenzie*, 2013 IL App (1st) 102925, ¶¶ 30-31. We first address whether the trial court sufficiently admonished defendant regarding his waiver of his right to file collateral petitions. This court has held that specific admonishments can be required only by statute or supreme court rule. *People v. McCaslin*, 2014 IL App (2d) 130571, ¶ 18. Where no specific admonishments are necessary to validate the waiver, such as in this case, the waiver's validity depends on the facts of the case. *Id.* ¶ 20. "Even where admonishments are prescribed, only substantial compliance—rather than strict compliance—is required." *People v. Reid*, 2014 IL App (3d) 130296, ¶ 12. Waivers of both constitutional and statutory rights must be knowing, voluntary, and intentional. *Id.* ¶ 11.

¶ 34    Thus, in the absence of a statute or supreme court rule prescribing admonitions that the trial court was required to give defendant, the question before us is whether the record confirms that defendant's waiver of his right to file collateral petitions was knowing, voluntary, and intentional. Such confirmation commonly takes the form of either a written waiver with a verbal affirmation that the defendant understands the waiver, or verbal admonishments by the trial court, though it is not limited to specific procedures. See *McCaslin*, 2014 IL App (2d) 130571, ¶¶ 22-23. Therefore, it is in all parties' best interests to ensure that the defendant fully understands the waiver and that that understanding is reflected in the record.

¶ 35    We conclude that, based on the record before us, defendant's waiver was knowing, voluntary, and intentional. At the hearing on June 29, 2007, before the plea agreement was final,

defendant acknowledged in open court that the proposed plea agreement would prohibit him from raising any issue in postconviction litigation in either state or federal court and that he would have to "waive any and all issues that [he] could ever have brought up throughout the rest of [his] life." Defendant was represented by counsel at all times, and at the plea agreement hearing defense counsel stated that he believed that defendant fully understood the plea agreement. *Cf. id.* ¶ 23 (in finding the defendant's waiver of his right to appeal valid and enforceable, this court noted, among other things, that defense counsel indicated on the waivers and agreements that she reviewed the documents with the defendant, that he understood them, and that he voluntarily agreed to participate); *Fearing*, 110 Ill. App. 3d at 646 (in finding that the defendant knowingly and voluntarily waived his right to appeal, the court noted that the defendant was represented by counsel). Also at the plea agreement hearing, the State's Attorney again stated that as part of the plea agreement defendant was waiving any appeals and all collateral attacks in state and federal court. During the trial court's admonishment of defendant, defendant agreed that the State's Attorney's recitation of the plea agreement was also his understanding of the agreement. The trial court specifically asked defendant if he understood that he was "giving up any right to attack these judgments at a later date," that he would violate the plea agreement if he filed a motion "to attack the judgments," and that he was "giving up any rights in the future to initiate any proceedings which attack the judgments for any reason whatsoever." As no specific admonishments were required in this case, we conclude that the trial court's admonishments, taken in the context of the record as described above, sufficiently informed defendant that he was waiving his right to file *any type* of collateral petition, thereby making an explanation of each type of collateral petition unnecessary. *Cf. Reid*, 2014 IL App

(3d) 130296, ¶ 17 (trial court was not required to discuss specific postconviction processes in admonishing the defendant about waiving his right to file a postconviction petition).

¶ 36    We next examine defendant's argument that, if his waiver was enforceable, the remedy for his filing petitions in violation of the plea agreement should have been vacating the agreement, rather than striking the petitions.  We conclude that defendant's argument lacks merit.  If the State repudiates a plea agreement, specific performance is warranted only if the repudiation constituted a denial of due process that can be remedied only by allowing the defendant specific performance of the agreement.  *People v. Navarroli*, 121 Ill. 2d 516, 523-24 (1988); *Budinger*, 230 Ill. App. 3d at 286.  Therefore, we agree with the State that, as defendant himself violated the agreement by filing collateral petitions, he cannot show that his due process rights were violated, so he cannot demand specific performance in the form of vacating the guilty pleas and proceeding to trial on the charges.  Defendant argues that the State's only other alternative was to let the petitions proceed on their merits.  However, the State could still attempt to enforce the agreement, so it was not required to allow defendant's petitions to proceed.  That being said, what was permissible for the State is different from the question of whether the trial court erred in striking the petitions as in violation of the plea agreement.  We now turn to that question.

¶ 37    We look first at defendant's postconviction petition.  The Postconviction Act provides a means for people serving criminal sentences to assert that their convictions resulted from substantial denials of their constitutional rights.  *People v. Smith*, 2015 IL 116572, ¶ 9.  It creates a three-stage process for adjudicating a postconviction petition.  *Id*.  At the first stage, the trial court independently determines, without input from the State and "[w]ithin 90 days after the filing and docketing of" the petition, whether the petition is "frivolous or is patently without

merit." 725 ILCS 5/122-2.1 (West 2012). If it finds that the petition is frivolous or patently without merit, the trial court is to dismiss it. *Id.* If not, the trial court is to docket the petition for second-stage proceedings. *Id.* During the second stage, the trial court may appoint counsel to represent an indigent defendant, and counsel may file an amended petition. *People v. Hommerson*, 2014 IL 115638, ¶ 8. If the trial court does not dismiss the petition during the second stage, it will conduct an evidentiary hearing on the petition's merits during the third stage. 725 ILCS 5/122-6 (West 2012). We review *de novo* the first-stage dismissal of a postconviction petition. *People v. Swamynathan*, 236 Ill. 2d 103, 113 (2010). We recognize that the trial court struck the petition here rather than dismissing it on its merits. However, whether the trial court was entitled to strike the petition is a question of law, which we review *de novo*. *People v. Salem*, 2016 IL 118693, ¶ 11 (questions of law are reviewed *de novo*).

¶ 38     In *Edgeston*, this court stated that "a postconviction-relief waiver should be enforced if it is knowing and voluntary." *Edgeston*, 396 Ill. App. 3d at 522. A waiver can be unknowing and involuntary if the defendant was improperly admonished (see *Fearing*, 110 Ill. App. 3d at 646), which we have concluded does not apply in this case. However, ineffective assistance of counsel can also result in a defendant's waiver being less than knowing and voluntary. See *Edgeston*, 396 Ill. App. 3d at 523. Put differently, because waivers of rights to file collateral petitions will be upheld only if they are knowing and voluntary (*id.* at 522), a defendant may still file a postconviction petition claiming that his waiver was not knowing and voluntary. Indeed, in this case defendant alleged in his postconviction petition that his counsel was ineffective for coercing defendant to plead guilty through incorrect legal advice. While we acknowledge the presence of this claim, it is not our role to determine whether it is frivolous or patently without merit. See *People v. Carter*, 383 Ill. App. 3d 795, 798 (2008) (under the Postconviction Act, it is the role of

the trial court to initially determine whether a claim is frivolous or patently without merit). The trial court struck the petition without reviewing it, thus precluding defendant from challenging the waiver, and the striking of the petition was therefore error.

¶ 39    Defendant notes that the Postconviction Act requires the trial court to determine whether a petition is frivolous or patently without merit within 90 days of its docketing. 725 ILCS 5/122-2.1 (West 2012). He argues that, because this did not occur, the petition must be remanded for second-stage proceedings. We agree. "The 90-day time requirement is mandatory and a trial court's noncompliance with the time requirement renders a summary dismissal order void" (*Swamynathan*, 236 Ill. 2d at 113), in which case the petition must then proceed to the second stage (*People v. Longbrake*, 2013 IL App (4th) 120665, ¶ 15). Even the filing of a notice of appeal does not toll or extend the 90-day period in which the trial court may summarily dismiss a petition. *People v. Vasquez*, 307 Ill. App. 3d 670, 673 (1999). Accordingly, we reverse the trial court's order striking defendant's postconviction petition and remand for second-stage proceedings. Because we are remanding for second-stage proceedings, we do not address whether the violation of a plea agreement is an affirmative defense for the State that may not be considered during first-stage review.

¶ 40    We now turn to defendant's section 2-1401 petition. Section 2-1401 allows for relief from final orders and judgments more than 30 days but less than two years after their entry. 735 ILCS 5/2-1401 (West 2012). Certain time periods are excluded in calculating the two-year deadline, such as where the petitioner was under legal duress or the ground for relief was fraudulently concealed. 735 ILCS 5/2-1401(c) (West 2012). Section 2-1401 petitions are subject to the rules of civil procedure, and under those rules the respondent/State has 30 days to file an answer or appearance. *Laugharn*, 233 Ill. 2d at 323. If the State does not answer the

petition, it admits all well-pleaded facts. *People v. Vincent*, 226 Ill. 2d 1, 9 (2007). A trial court may not *sua sponte* dismiss a section 2-1401 petition before the expiration of the 30-day period, as it is not " 'ripe for adjudication.' " *Laugharn*, 233 Ill. 2d at 323.

¶ 41    Defendant argues that, because the trial court struck his section 2-1401 petition before the 30-day response period had expired, its ruling was premature and thus the cause must be remanded. However, he acknowledges that the preliminary issue of service must be addressed, as Illinois Supreme Court Rule 105(b) (eff. Jan. 1, 1989) requires service by summons, certified mail, registered mail, or publication, whereas defendant claims that he served the State by regular mail. Defendant points out that different appellate court decisions have taken different views on the effect of such imperfect service, with many finding that imperfect service without a waiver of service by the State requires that the case be remanded. See, *e.g.*, *People v. Maiden*, 2013 IL App (2d) 120016, ¶ 27; *People v. Prado*, 2012 IL App (2d) 110767, ¶ 12.

¶ 42    Although the briefing in this case was completed more than one year ago, this court held the case in abeyance pending our supreme court's decision in *People v. Carter*, 2015 IL 117709, which impacts our analysis of this issue. In *Carter*, the trial court *sua sponte* dismissed the defendant's section 2-1401 petition, after the 30-day response period, at a hearing at which an assistant State's Attorney was present but did not file an answer or participate. *Id.* ¶ 6. The State had allegedly been served improperly. *Id.* ¶ 7. The appellate court vacated and remanded pursuant to *Laugharn* and *Vincent*, reasoning that the trial court could not dismiss the petition without proper service on the State. *Id.* ¶ 10. The supreme court reversed the appellate court's judgment, stating that nothing in the record affirmatively established that the State was not given proper notice or that the trial court's *sua sponte* dismissal was premature. *Id.* ¶ 24. In particular, the court stated that the defendant did not meet his burden of showing that his petition was sent

by some means other than certified or registered mail, as his statement in his proof of service that he placed the petition in the institutional mail to be delivered through the United States Postal Service was insufficient to meet his burden. *Id.* ¶ 20. The court stated:

> "To be sure, we encourage circuit courts to ascertain and note of record the date the State was properly served, and to time any *sua sponte* rulings on pending petitions accordingly. That said, however, any section 2-1401 petitioner who seeks to use, on appeal, his own error, by way of allegedly defective service, in an effort to gain reversal of a circuit court's *sua sponte* dismissal of his or her petition on the merits, must affirmatively demonstrate the error via proceedings of record in the circuit court." *Id.* ¶ 25.

¶ 43 Here, defendant stated in his proof of service that he put his pleadings in the institutional mail for delivery through the United States Postal Service. Under *Carter*, this statement is insufficient to show that the State was not properly served. Moreover, although the record includes copies of the envelopes received by the circuit court clerk, the record does not include copies of the envelopes sent to the State, so defendant has not met his burden of showing that he improperly served the State.

¶ 44 Even though we are not remanding based on improper service, we still conclude that the trial court erred in striking defendant's petition, as the ruling was premature under *Laugharn*. See *People v. Needham*, 2016 IL App (2d) 130473, ¶ 18. An assistant State's Attorney was present at the March 20, 2013, hearing when the trial court addressed defendant's petition. The State indicated that it could not yet file a response but had ordered a transcript of the plea hearing for the purposes of doing so. Nevertheless, the trial court struck defendant's petition that day, and the State did not file the transcript until April 3, 2013. Thus, the trial court ruled on

defendant's petition before 30 days had passed and before the State had filed its response. Accordingly, we reverse the trial court's ruling and remand for further proceedings. See *id.* ¶¶ 21-22.

¶ 45                                    III. CONCLUSION

¶ 46    For the reasons stated, we reverse the trial court's rulings striking defendant's postconviction petition and section 2-1401 petition. We remand for further proceedings consistent with our opinion.

¶ 47    Reversed and remanded.